# Illinois Official Reports

## Supreme Court

***People v. Holmes*, 2017 IL 120407**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DAVID HOLMES, Appellee. |
| Docket No. | 120407 |
| Filed | July 20, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Dennis J. Porter, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (David L. Franklin, Solicitor General, Michael M. Glick and Garson S. Fischer, Assistant Attorneys General, and Alan J. Spellberg and Paul J. Connery, Assistant State's Attorneys, of counsel), for the People. |
| | Amy P. Campanelli, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellee. |

| Justices | JUSTICE GARMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Karmeier and Justices Freeman, Thomas, Burke, and Theis concurred in the judgment and opinion. |
| | Justice Kilbride dissented, with opinion. |

**OPINION**

¶ 1 Defendant David Holmes was arrested when a Chicago police officer observed a revolver in defendant's waistband. After the arrest, police also discovered that defendant lacked a Firearm Owner's Identification (FOID) card. Defendant was charged with four counts of aggravated unlawful use of a weapon (AUUW). Counts I and III alleged that defendant carried a loaded, uncased, immediately accessible firearm (720 ILCS 5/24-1.6(a)(1), (a)(3)(A); (a)(2), (a)(3)(A) (West 2012)), and counts II and IV alleged that he did so without a FOID card (720 ILCS 5/24-1.6(a)(1), (a)(3)(C); (a)(2), (a)(3)(C) (West 2012)). Subsequent to defendant's arrest, this court issued its decision in *People v. Aguilar*, holding that section 24-1.6(a)(1), (a)(3)(A), (d)(1) was facially unconstitutional because it violated the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution. *People v. Aguilar*, 2013 IL 112116, ¶ 22. The State entered a *nolle prosequi* on counts I and III. Defendant filed a motion to quash his arrest and suppress evidence with respect to counts II and IV on the ground that the arresting officer only had probable cause to believe defendant was violating sections 24-1.6(a)(1), (a)(3)(A) and 24-1.6(a)(2), (a)(3)(A), which had been declared unconstitutional. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A); (a)(2), (a)(3)(A) (West 2012). As a result, defendant argued that probable cause was retroactively invalidated and therefore his arrest violated his right to be free from unreasonable search and seizure under the state and federal constitutions.

¶ 2 After a hearing, the circuit court granted defendant's motion. The appellate court affirmed. 2015 IL App (1st) 141256, ¶ 40. We allowed the State's petition for leave to appeal, pursuant to Illinois Supreme Court Rule 315 (eff. Mar. 15, 2016).

¶ 3                                    BACKGROUND

¶ 4 In January 2014, defendant filed a motion to quash his arrest and suppress evidence with respect to counts II and IV. Because the probable cause underlying defendant's arrest was based solely upon a violation of sections 24-1.6(a)(1), (a)(3)(A) and 24-1.6(a)(2), (a)(3)(A) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A); (a)(2), (a)(3)(A) (West 2012)), which were declared facially unconstitutional in *Aguilar* after defendant's arrest, defendant argued that the void *ab initio* doctrine retroactively invalidated probable cause.

¶ 5 At the hearing on defendant's motion, the arresting officer, Gabriel Barrera, testified that on June 8, 2012, he was patrolling the 63rd Street Beach in Chicago. Officer Barrera saw defendant lean into the passenger-side window of a vehicle to speak to the driver. Defendant's shirt rode up, revealing a revolver tucked into his waistband. Officer Barrera approached defendant, asked him to place his hands on his head, and removed defendant's revolver.

Officer Barrera's partner then took defendant into custody. It was after defendant was taken into custody that Officer Barrera learned defendant's name and that he did not have a FOID card. Officer Barrera had no arrest or search warrant for defendant at the time of his arrest. Officer Barrera conceded that, before arresting defendant, he did not know any information about defendant. Therefore, probable cause was based solely upon defendant's violation of the subsequently invalidated AUUW subsections. Following Officer Barrera's testimony, defendant argued that the arrest should be quashed and all evidence resulting from the arrest suppressed because

> "At the time, yes, the officer did have the right to place [defendant] under arrest. He had a right to search him and recover that gun.
>
> Post-*Aguilar*, Judge, he didn't because that portion of the statute was found to be unconstitutional. It was found to be void. It had [*sic*] ab initio. The point being though now that's no longer okay. Just somebody carrying a gun is not a reason for officers to place him in custody and place him under arrest."

The trial court noted:

> "It might be kind of unfortunate because the officer didn't do anything wrong at the time. But if it is true that the statute is void ab initio then it is like it never existed. And if it never existed it is that portion of the statute [*sic*] then the officer didn't have probable cause."

¶ 6    The appellate court affirmed, explaining that its conclusion was informed by this court's decision in *People v. Carrera*, 203 Ill. 2d 1 (2002):

> "[O]ur supreme court in *Carrera* stated that a facially invalid statute is void *ab initio*. *** In other words, '[i]t is as though no such law had ever been passed.' [Citation.] ***
>
> Based on the *Carrera* court's language, we conclude the void *ab initio* doctrine precludes the application of the good-faith doctrine in defendant's case. *** As the *Carrera* court explained, applying the good-faith exception to defendant's case would 'run counter to *** void *ab initio* jurisprudence.' [Citation.] Further, the *Carrera* court stated that giving 'legal effect' to the fact that the prior statute existed in the defendant's case would 'effectively resurrect' the statute 'and provide a grace period *** during which our citizens would have been subject to extraterritorial arrests without proper authorization.' " 2015 IL App (1st) 141256, ¶¶ 29-30 (quoting *People v. Carrera*, 203 Ill. 2d 1, 14, 16 (2002)).

¶ 7    Referencing *Michigan v. DeFillippo*, 443 U.S. 31 (1979), and *United States v. Charles*, 801 F.3d 855 (7th Cir. 2015), the appellate court noted that, "[a]s a result of the Illinois void *ab initio* doctrine, we are *** in the unique position of having to hold that the same exact conduct could establish probable cause if a case was brought in the federal system but not if it was brought in our state courts." 2015 IL App (1st) 141256, ¶ 36.

¶ 8                                                    ANALYSIS
¶ 9    When reviewing a trial court's ruling on a motion to quash arrest and suppress evidence, this court applies a two-part standard of review. *People v. Almond*, 2015 IL 113817, ¶ 55. Great deference is afforded to the trial court's findings of fact, and those factual findings will be reversed only if they are against the manifest weight of the evidence. *Id.* This court reviews

*de novo* the trial court's ultimate legal ruling as to whether the evidence should be suppressed. *Id.*

¶ 10    Before this court, the State contends that (1) the void *ab initio* doctrine does not retroactively invalidate an arrest made upon probable cause to believe a defendant was violating a then-valid criminal statute and, (2) alternatively, if the void *ab initio* doctrine does retroactively invalidate such an arrest, then the good-faith exception to the exclusionary rule should apply because the statute in the instant case is substantive in nature, in that it makes unlawful certain conduct, and does not, by its own terms, confer unconstitutional search and seizure authority upon police.

¶ 11    Defendant acknowledges that, at the time of his arrest, Officer Barrera had probable cause to arrest him for carrying a loaded, uncased, immediately accessible firearm. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A); (a)(2), (a)(3)(A) (West 2012). Defendant, however, contends that our 2002 decision in *Carrera* mandates strict application of the void *ab initio* doctrine, which, defendant maintains, would have the effect of retroactively invalidating probable cause and thereby incidentally mandating the suppression of the evidence inculpating defendant for his FOID violation. Any other result, according to defendant, would be counter to the void *ab initio* doctrine.

¶ 12    The void *ab initio* doctrine is a state jurisprudential principle. "When a statute is held to be facially unconstitutional, the statute is said to be void *ab initio*, *i.e.*, void 'from the beginning.' " (Internal quotation marks omitted.) *People v. McFadden*, 2016 IL 117424, ¶ 17 (quoting *Perlstein v. Wolk*, 218 Ill. 2d 448, 455 (2006)). "An unconstitutional law 'confers no right, imposes no duty and affords no protection. It is *** as though no such law had ever been passed.' " *People v. Gersch*, 135 Ill. 2d 384, 399 (1990) (quoting *People v. Schraeberg*, 347 Ill. 392, 394 (1932)). "[W]here a statute is violative of constitutional guarantees, we have a duty not only to declare such a legislative act void, but also to correct the wrongs wrought through such an act by holding our decision retroactive." *Id.* The law is clear that a defendant cannot be prosecuted under a statute that is void *ab initio*. See *McFadden*, 2016 IL 117424, ¶ 19. Less clear is whether the void *ab initio* doctrine is meant to be given such literal interpretation as to extend its reach to probable cause.

¶ 13    In the instant case, the appellate court concluded that this court's decision in *Carrera* dictates that probable cause based on a statute later found unconstitutional is retroactively invalidated by operation of the void *ab initio* doctrine.

¶ 14                                      People v. Carrera

¶ 15    In *Carrera*, the defendant was arrested pursuant to a statute that granted police extraterritorial arrest powers. 203 Ill. 2d at 7. Subsequent to the defendant's arrest, the statute was held unconstitutional because it was enacted in violation of the single subject rule of the Illinois Constitution of 1970. *People v. Reedy*, 186 Ill. 2d 1, 12 (1999). Thereafter, the statute was declared void *ab initio* in *People v. Ramsey*, 192 Ill. 2d 154, 156 (2000).

¶ 16    Before this court, the State argued (1) that the good-faith exception to the exclusionary rule applies where police rely upon a statute later declared unconstitutional and (2) that the exclusionary rule was inapplicable because the police did not conduct a constitutionally unreasonable search or seizure but simply acted outside territorial limits without valid statutory authority to do so. *Carrera*, 203 Ill. 2d at 10. The State forfeited the issue of whether

- 4 -

the exclusionary rule applied but urged this court to still consider it because resolution of that issue must occur prior to reaching the question of whether the good-faith exception applies. *Id.* at 11.

¶ 17    A majority of this court concluded that Illinois law was settled that the exclusionary rule applies where police effectuate an extraterritorial arrest without appropriate statutory authority. *Id.* In response, the State argued that the good-faith exception to the exclusionary rule applied because the police did not violate the defendant's substantive constitutional rights in effectuating the extraterritorial arrest. *Id.* at 13. Acknowledging the State's argument, the majority stated that it was choosing "to resolve this cause on narrower grounds" because "[i]n our estimation, the result that we reach is dictated by application of the void *ab initio* doctrine." *Id.* at 13-14.

¶ 18    The majority explained that "[t]he void *ab initio* doctrine applies equally to legislative acts which are unconstitutional because they violate substantive constitutional guarantees [citation] and those that are unconstitutional because they are adopted in violation of the single subject clause of our constitution [citation]." *Id.* at 14-15. The majority would not consider the State's good-faith exception argument, since application of "the good-faith exception would run counter to our single subject clause and void *ab initio* jurisprudence—specifically, that once a statute is declared facially unconstitutional, it is as if it had never been enacted." *Id.* at 16. The majority reasoned:

"In our estimation, to give effect to the historical fact that the amendment existed at the time of defendant's arrest would effectively resurrect the amendment and provide a grace period (in this case four years between the effective date of the amendment and the date of our opinion in *Reedy* finding Public Act 89-404 unconstitutional) during which our citizens would have been subject to extraterritorial arrests without proper authorization. Our decision not to recognize an exception to the exclusionary rule where a statute is enacted in violation of the single subject clause comports with our jurisprudence that a statute which is facially invalid, and thus unconstitutional in its entirety, is void *ab initio*." *Id.*

¶ 19    However, we find that *Carrera* is distinguishable from the present case for the following reasons. First, the statute at issue in *Carrera* did not itself violate any provision of the United States Constitution. *Id.* at 22 (Garman, J., dissenting, joined by Fitzgerald and Thomas, JJ.) ("[T]he constitutional infirmity in the statute did not spring from any violation of the fourth amendment of the United States Constitution or article I, section 6, of the state constitution."). Rather, the statute at issue was held unconstitutional because it was enacted in violation of the single subject clause of the state constitution. *Id.* at 14-15 (majority opinion). *Carrera* involved strict application of a state jurisprudential doctrine—the void *ab initio* doctrine—to a state statute declared unconstitutional on purely state grounds. *Id.* at 16. In the instant case, the statute at issue was held unconstitutional because it violated the second amendment of the United States Constitution. The reasoning underlying this court's decision in *Carrera* cannot therefore be automatically applied to the present case, which involves the relationship between the void *ab initio* doctrine and a statute declared unconstitutional on federal grounds.

¶ 20    Second, the majority in *Carrera* declined to consider whether the good-faith exception to the exclusionary rule applied. *Id.* The issue of whether police had probable cause to arrest the defendant in *Carrera* had been forfeited. See *id.* at 18. Therefore, probable cause was not at

issue in *Carrera*. The State also forfeited the issue of whether the exclusionary rule applied. *Id.* at 10. Rather, the majority resolved the case by applying the void *ab initio* doctrine and declined to address the good-faith exception due to its belief that application of the good-faith exception would be counter to the void *ab initio* doctrine. *Id.* at 16. The present case requires that we first address whether probable cause is retroactively invalidated. If not, then any reasoning involving the good-faith exception to the exclusionary rule is inapposite.

¶ 21 Third, *Carrera* is distinguishable because the facts and issues present did not implicate the limited lockstep doctrine. The single subject clause of the Illinois Constitution of 1970 does not have a cognate provision in the United States Constitution. See *People v. Caballes*, 221 Ill. 2d 282, 289 (2006) ("First, a provision may be unique to the state constitution and, therefore, must be interpreted without reference to a federal counterpart. The single-subject rule of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 8(d)) is such a provision."). In the instant case, we must address whether probable cause is invalidated by application of the void *ab initio* doctrine. Where, as here, the existence of probable cause is at issue, which is by definition a fourth amendment issue, we must look to federal law pursuant to the limited lockstep doctrine. See *People v. Fitzpatrick*, 2013 IL 113449, ¶ 28.

¶ 22 For the reasons that we explain below, strict application of the void *ab initio* doctrine in the present context, to the extent posited by defendant, would conflict (1) with precedent from the United States Supreme Court and (2) with two recent decisions from this court.

¶ 23 *Limited Lockstep Doctrine*

¶ 24 Under our limited lockstep doctrine, we construe the search and seizure clause of our state constitution in accordance with the United States Supreme Court's interpretation of the fourth amendment unless any of the narrow exceptions to lockstep interpretation apply. See *id.* This conclusion is "based on the premise that the drafters of the 1970 constitution and the delegates to the constitutional convention intended the phrase 'search and seizure' in the state document to mean, in general, what the same phrase means in the federal constitution." *Caballes*, 221 Ill. 2d at 314.

¶ 25 "Both the fourth amendment to the United States Constitution, which applies to the states via the fourteenth amendment (*Mapp v. Ohio*, 367 U.S. 643 (1961)), and article I, section 6, of the Illinois Constitution of 1970, guarantee Illinois citizens the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6." *People v. Gaytan*, 2015 IL 116223, ¶ 20. Notably, the term "probable cause" is incorporated in both the state and federal search and seizure provisions. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Therefore, we follow decisions of the United States Supreme Court regarding searches and seizures.

¶ 26 In *Michigan v. DeFillippo*, the United States Supreme Court addressed "whether an arrest made in good-faith reliance on an ordinance, which at the time had not been declared unconstitutional, is valid regardless of a subsequent judicial determination of its unconstitutionality." 443 U.S. 31, 33 (1979). The ordinance at issue provided that a police officer could stop and question an individual if he had reasonable cause to believe that the individual's behavior warranted further investigation for criminal activity. *Id.* The ordinance was subsequently amended to make it a crime for any person stopped pursuant to the ordinance to refuse to identify himself and produce evidence of his identity. *Id.* When the defendant

failed to identify himself, he was taken into custody and searched. *Id.* at 34. The search revealed a package of marijuana and packet containing a controlled substance. *Id.* The defendant was charged with possession of the controlled substance. *Id.* The defendant was not charged with or tried for violation of the ordinance. *Id.* Subsequently, the ordinance making it a crime to refuse to identify oneself was held unconstitutionally vague on its face. *Id.*

¶ 27    The State argued that because of the violation of the ordinance, which the defendant committed in the presence of the officers, the defendant was subject to a valid arrest and the search that followed was a valid search incident to arrest. *Id.* at 35. Therefore, evidence of the drugs should not have been suppressed. *Id.* The defendant maintained that since his arrest was for allegedly violating an ordinance later held unconstitutional, the search was likewise invalid. *Id.* After noting that the arresting officer had abundant probable cause to believe the defendant violated the ordinance, the United States Supreme Court rejected the argument that the officer lacked probable cause because he should have known the ordinance was invalid and would later be judicially declared unconstitutional. *Id.* at 36-37. "A prudent officer *** should not have been required to anticipate that a court would later hold the ordinance unconstitutional." *Id.* at 37-38. The Supreme Court explained further:

> "Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." *Id.* at 38.

¶ 28    In *United States v. Charles*, police responded to a call involving a road rage incident after a woman reported that the other driver was pounding on her car window and had displayed a gun. 801 F.3d 855, 857 (7th Cir. 2015). When officers reached the scene, the defendant emerged from his car. *Id.* The defendant matched the caller's description of the man with the gun, the responding officer noticed a bulge under the defendant's clothing, and the responding officer detained and frisked him. *Id.* After finding nothing, the officer searched the defendant's car, wherein the officer discovered a loaded handgun. *Id.* The defendant was indicted for possessing a firearm as a felon. *Id.* In finding probable cause, the court noted:

> "It's true that Chicago's handgun ban was later invalidated, *see McDonald*, 561 U.S. at 791, 130 S.Ct. 3020, as was the Illinois concealed-carry law, *see Moore*, 702 F.3d at 942. But the '[p]olice are charged to enforce laws until and unless they are declared unconstitutional,' so a search based on a violation of a law later declared unconstitutional does not necessarily violate the Fourth Amendment. *Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Although Charles could not be punished for violating an unconstitutional statute or ordinance, unless a law is 'grossly and flagrantly unconstitutional,' a police officer conducting a search may reasonably rely on it for Fourth Amendment purposes. *Id.*" *Id.* at 861.

¶ 29    Federal case law is clear that, under the facts of this case, probable cause would not be retroactively invalidated by the subsequent invalidation of the statute upon which probable cause was based at the time of the arrest. *DeFillippo*, 443 U.S. 31; *Charles*, 801 F.3d 855. We find this analysis compelling. Strict application of the Illinois void *ab initio* doctrine, to the

literal extent posited by defendant, would conflict with our continued adherence to the limited lockstep doctrine.

¶ 30                                    People v. Blair *and* People v. McFadden

¶ 31    Our conclusion is consistent with this court's recent decisions in *People v. Blair*, 2013 IL 114122, and *People v. McFadden*, 2016 IL 117424.

¶ 32    First, in *Blair*, this court considered whether Public Act 95-688 (eff. Oct. 23, 2007), which amended the armed violence statute, revived the sentencing enhancement in the armed robbery statute that this court held unconstitutional in *People v. Hauschild*, 226 Ill. 2d 63 (2007). *Blair*, 2013 IL 114122, ¶ 1. Relevant here, the State in *Blair* disputed that, under the void *ab initio* doctrine, the legislature could revive the armed robbery sentencing enhancement only by amending and/or reenacting that statute. *Id.* ¶ 25. The defendant argued that although Public Act 95-688 may have remedied the constitutional infirmity in the armed robbery statute, Public Act 95-688 did not revive the sentencing enhancement in that statute because "once *Hauschild* declared the armed robbery sentencing enhancement unconstitutional the statute was void *ab initio*, and 'the enhancement never existed.' " *Id.* ¶ 26. Agreeing with the State, this court explained:

> "Contrary to defendant's argument, the void *ab initio* doctrine does not mean that a statute held unconstitutional never existed. As we recognized in *Perlstein*, [t]he actual existence of a statute, prior to a determination that the statute is unconstitutional, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. *Perlstein*, 218 Ill. 2d at 461 (quoting *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374 (1940)). Moreover, to construe the void *ab initio* doctrine as rendering a statute nonexistent is tantamount to saying that this court may repeal a statute. See *Certain Taxpayers v. [Sheahen]*, 45 Ill. 2d 75, 81 (1970) (effect of repeal is to obliterate the statute repealed as completely as though it had never been passed as a law and never existed). Such a result, however, would contravene our separation of powers clause. Ill. Const. 1970, art. II, § 1.

> The power to enact laws, and the concomitant power to repeal those laws, reside in the General Assembly. *** Although we are obligated to declare an unconstitutional statute invalid and void [citations], such a declaration by this court cannot, within the strictures of the separation of powers clause, repeal or otherwise render the statute nonexistent." (Internal quotation marks omitted.) *Id.* ¶¶ 29-30.

¶ 33    Next, in *McFadden*, we considered whether a conviction for AUUW based on section 24-1.6(a)(1), (a)(3)(A) could still serve as a prior felony conviction after that section was declared facially unconstitutional. 2016 IL 117424. The defendant argued that his 2008 conviction for unlawful use of a weapon (UUW) by a felon, a constitutionally valid offense, was not proven because the predicate felony conviction was based on that portion of the AUUW statute declared facially unconstitutional and void *ab initio* in *Aguilar*. *Id.* ¶ 21. We noted that, "[b]ased on this court's precedent, we continue to reaffirm the principle that the void *ab initio* doctrine renders a facially unconstitutional statute unenforceable and renders a conviction under that facially unconstitutional statute subject to vacatur." *Id.* ¶ 20. We explained:

- 8 -

"Although *Aguilar* may provide a basis for vacating defendant's prior 2002 AUUW conviction, *Aguilar* did not automatically overturn that judgment of conviction. Thus, at the time defendant committed the UUW by a felon offense, defendant had a judgment of conviction that had not been vacated and that made it unlawful for him to possess firearms." *Id.* ¶ 31.

¶ 34 Therefore, this court rejected the defendant's argument that the void *ab initio* doctrine, in and of itself, procedurally operated to overturn the 2002 AUUW conviction. The conviction would be treated as valid unless and until it was declared otherwise via judicial process. *Id.*

¶ 35 In the instant case, defendant attempts to distinguish *Blair* and *McFadden*. Specifically, defendant implies that, because *Blair* involved a question of revival and revival is not at issue in the instant case, *Blair* is inapposite. Defendant also asserts that *McFadden* did not curtail the reach of the void *ab initio* doctrine nor preclude the defendant from obtaining relief, as it addressed only the question of the procedural mechanism to challenge a conviction for unlawful use of a weapon by a felon where the underlying felony conviction had been based upon a statute later found unconstitutional. Because defendant "followed the proper procedure by filing a motion to suppress challenging his arrest without probable cause," defendant insinuates that *McFadden* is similarly inapplicable.

¶ 36 We reject these arguments. Defendant does not explain why, if the void *ab initio* doctrine did not bar a statutory amendment from being revived in *Blair* or did not automatically invalidate the judgment of a predicate felony conviction in *McFadden*, it would invalidate probable cause. Such a contention is irreconcilable with *Blair* and *McFadden*.

¶ 37 We hold that the void *ab initio* doctrine does not retroactively invalidate probable cause based on a statute later held unconstitutional on federal constitutional grounds or on state constitutional grounds subject to the limited lockstep doctrine. In the instant case, Officer Barrera had probable cause at the time of defendant's arrest, and thus there is no reason to suppress the evidence collected incidental to the arrest. Because we conclude that probable cause existed at the time of defendant's arrest and that probable cause was not retroactively invalidated by the subsequent declaration of unconstitutionality on second amendment grounds, the exclusionary rule does not apply. Thus, there is no need to consider the good-faith exception to the exclusionary rule.

¶ 38                                                CONCLUSION

¶ 39 The void *ab initio* doctrine did not retroactively invalidate probable cause for defendant's arrest because probable cause was predicated on a statute that was subsequently declared unconstitutional on federal grounds. Because probable cause is a component of both the federal and state search and seizure provisions, we follow federal law pursuant to the limited lockstep doctrine. Federal case law holds that probable cause for arrest would not be retroactively invalidated by subsequent declaration of a statute's unconstitutionality on federal grounds. See *DeFillippo*, 443 U.S. 31; *Charles*, 801 F.3d 855. *Carrera* is distinguishable and does not dictate a different result because (1) *Carrera* involved strict application of a state jurisprudential doctrine—the void *ab initio* doctrine—to a state statute declared unconstitutional on purely state grounds, (2) *Carrera* did not analyze probable cause, as it was not at issue, and (3) the facts and issues presented in *Carrera* did not implicate the limited lockstep doctrine. See *Carrera*, 203 Ill. 2d 1. Our conclusion comports with this court's

decisions in *Blair* and *McFadden*. See *Blair*, 2013 IL 114122; *McFadden*, 2016 IL 117424. To hold that the void *ab initio* doctrine requires retroactive invalidation of probable cause would be tantamount to a repeal of the statute, which would violate separation of powers. Because probable cause is not invalidated, no fourth amendment violation has occurred. Therefore, we need not reach the issue of whether the good-faith exception to the exclusionary rule may apply. Consequently, we reverse the judgment of the appellate court and remand the case to the circuit court for further proceedings.

¶ 40    Reversed and remanded.

¶ 41    JUSTICE KILBRIDE, dissenting:

¶ 42    This opinion brings the demise of this court's void *ab initio* doctrine one step closer. While once again purportedly " 'continu[ing] to reaffirm the principle that the void *ab initio* doctrine renders a facially unconstitutional statute unenforceable' " (*supra* ¶ 33 (quoting *People v. McFadden*, 2016 IL 117424, ¶ 20)), the majority simultaneously vitiates both that doctrine's reason for being and our institutional duty to void statutes that are facially unconstitutional and to remediate the damage they have done. In reaching its decision, the majority construes this court's opinion in *People v. Carrera*, 203 Ill. 2d 1, 16 (2002), so narrowly that it is effectively overruled. The majority's analysis is fundamentally incompatible with *stare decisis* and our "paramount and constitutionally mandated function" to protect citizens' constitutional rights from facially unconstitutional legislation. *People v. Gersch*, 135 Ill. 2d 384, 398 (1990). Because I cannot agree, I respectfully dissent.

¶ 43    In 1886, the United States Supreme Court explained that "[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County*, 118 U.S. 425, 442 (1886); see also *supra* ¶ 12 (quoting *Gersch*, 135 Ill. 2d at 399, quoting *People v. Schraeberg*, 347 Ill. 392, 394 (1932)). This court has consistently followed that formulation of the void *ab initio* doctrine, repeatedly deeming facially unconstitutional statutes void " 'from the beginning.' " *Perlstein v. Wolk*, 218 Ill. 2d 448, 455 (2006) (quoting Black's Law Dictionary 1604 (8th ed. 2004)). No one may be prosecuted in Illinois under a facially unconstitutional law because " '[a]n invalid law is no law at all.' " (Internal quotation marks omitted.) *Gersch*, 135 Ill. 2d at 399 (quoting *Van Driel Drug Store, Inc. v. Mahin*, 47 Ill. 2d 378, 381 (1970), quoting *People ex rel. Barrett v. Sbarbaro*, 386 Ill. 581, 590 (1944)). While we have occasionally permitted a somewhat more relaxed, equitable application of the void *ab initio* doctrine in civil cases, we have adhered to its strict application in criminal matters for decades. Indeed, we have actively championed strict application of the doctrine in criminal cases, "where a defendant's constitutionally guaranteed rights are in need of vindication." *Perlstein*, 218 Ill. 2d at 466.

¶ 44    While necessarily acknowledging this substantive backdrop (*supra* ¶ 12), the majority nonetheless chooses to distance itself from those precedents, relying instead on a faulty analogy that erroneously equates the "repeal" of a statute with a judicial declaration that it is void *ab initio*. According to the majority, " 'to construe the void *ab initio* doctrine as rendering a statute nonexistent is tantamount to saying that this court may repeal a statute. [Citation.] Such a result, however, would contravene our separation of powers clause.' " *Supra* ¶ 32

(quoting *People v. Blair*, 2013 IL 114122, ¶ 29). Not surprisingly, however, the parties' briefs do not raise the spectre of a "judicial repeal." Applying the majority's approach, even the Supreme Court's 1886 description of a judicial finding of unconstitutionality would create a separation of powers violation. See *Norton*, 118 U.S. at 442 (explaining that "[a]n unconstitutional act is not a law; *** it is, in legal contemplation, as inoperative as though it had never been passed"). Used properly, "repeal" is, in fact, a legal term of art meaning "abrogation of an existing law *by legislative act*." (Emphasis added.) A repeal may be "express," relying on a "specific declaration in a new statute or main motion," or "implied," produced by an "irreconcilable conflict between an old law or main motion and a more recent law or motion." Black's Law Dictionary 1413 (9th ed. 2009). Regardless of the type, however, a "repeal" necessarily involves legislative action. See also *Certain Taxpayers v. Sheahen*, 45 Ill. 2d 75, 81 (1970) (noting that, when one *legislative act* repeals another, the effect is to "obliterate" the original statute as though it never existed).

¶ 45        In contrast, the void *ab initio* doctrine was judicially adopted to vindicate our citizens' fundamental right to be free from unconstitutional legislation and to discourage its enactment. While the effect of this equitable doctrine may be similar to that of a legislative repeal, it is a distinct mechanism based on policy determinations specifically tied to the differing roles played by the courts and the legislature. *Gersch*, 135 Ill. 2d at 396. Because judicial decisions declare the existing law, they allow for only incremental adjustments as conditions evolve. This slower process allows courts to consider whether equitable factors justify the retroactive application of each change. In contrast, the legislature is empowered to alter the course of public policy sharply and to create unexpected new rights and responsibilities. For that reason, legislative actions are presumed to apply only prospectively. *Gersch*, 135 Ill. 2d at 396-97. "A constitutionally repugnant enactment suddenly cuts off rights that are guaranteed to every citizen [citation], and instantaneously perverts the duties owed to those citizens." *Gersch*, 135 Ill. 2d at 397. By failing to apply the void *ab initio* doctrine to inactivate facially unconstitutional statutes retroactively, this court would "effectively resurrect the amendment and provide a grace period *** during which our citizens would have been subject to" unconstitutional legislative action. *Carrera*, 203 Ill. 2d at 16. "To hold that a judicial decision that declares a statute unconstitutional is not retroactive would forever prevent those injured under the unconstitutional legislative act from receiving a remedy for the deprivation of a guaranteed right." *Gersch*, 135 Ill. 2d at 397. Those considerations, along with our mandate to strike down statutes that infringe on citizens' constitutional rights, have been the driving forces behind our strict application of the void *ab initio* doctrine in criminal cases. *Gersch*, 135 Ill. 2d at 398-99.

¶ 46        Here, the relevant statute eviscerated Illinois citizens' fundamental right to possess firearms, contrary to the core values firmly ensconced in the second amendment of our federal constitution (U.S. Const., amend. II). *People v. Aguilar*, 2013 IL 112116, ¶ 16. The majority's position drastically, and unnecessarily, undermines the protections provided by our strict application of the void *ab initio* doctrine. Without those protections, citizens unlucky enough to attract the attention of law enforcement while exercising their second amendment rights are exposed to otherwise impermissible prosecution for secondary conduct. In those instances, I continue to support this court's application of the void *ab initio* doctrine both to protect guaranteed constitutional rights and to uphold our precedents shielding citizens from the sort

- 11 -

of extreme collateral damage that, as in this case, can arise from arrests for facially unconstitutional offenses.

¶ 47    Contrary to the majority's claim (*supra* ¶ 32), the effect of a judicial declaration that a statute is facially unconstitutional, and thus void *ab initio*, does not violate the separation of powers clause, at least no more than does the inevitable intertwining of our statutory constructions with the underlying statutory language. *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 19 (recognizing that the judicial construction of a statute effectively becomes part of that statute); *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 343 (2008) (and cases cited therein). The inherent interweaving of common law and statutory enactment has never been deemed an unconstitutional judicial crossover into the legislature's exclusive territory, nor should it be. It is simply the natural outcome when each branch of government fulfills its intended function.

¶ 48    Similarly, legislative repeal and our strict application of the void *ab initio* doctrine both provide mechanisms exercising the complementary authority possessed by our coequal branches of government. Our strict application of the void *ab initio* doctrine, however, is not, and never has been, "tantamount to saying that this court may repeal a statute." (Internal quotation marks omitted.) *Supra* ¶ 32. Perhaps that is the reason the parties' briefs did not include that argument, necessitating the majority's *sua sponte* discussion. The majority's contrary conclusion suggests that many of our decisions applying the doctrine are unconstitutional, seriously undercutting their validity.

¶ 49    The majority's approach also attacks our analysis in *Carrera*, when we applied the exclusionary rule to an extraterritorial arrest conducted in reliance on a statute later held facially unconstitutional. We declined to consider the good-faith exception, concluding that it "would run counter to our single subject clause and void *ab initio* jurisprudence." *Carrera*, 203 Ill. 2d at 16. We further declined to give effect to the historical fact that the arrest was authorized by a statute that, at the time, was valid because doing so "would effectively resurrect the amendment and provide a grace period *** during which our citizens would have been subject to extraterritorial arrests without proper authorization." *Carrera*, 203 Ill. 2d at 16. The majority's abandonment of that principle here is irreconcilable with its purported allegiance to our void *ab initio* doctrine as well as our rejection of the Supreme Court's decision in *Illinois v. Krull*, 480 U.S. 340 (1987), in favor of the dissent authored by Justice O'Connor, based on the same rationale. See *People v. Krueger*, 175 Ill. 2d 60, 71-73 (1996) (discussing *Krull*, 480 U.S. at 361-69 (O'Connor, J., dissenting, joined by Brennan, Marshall, and Stevens, JJ.)). As this case makes clear, the creation of a grace period for violating our citizens' constitutional rights with legislative impunity remains a serious concern and requires swift and complete remedial action. The AUUW provision at issue had been in effect since 2000 and undoubtedly had been applied against hundreds, if not thousands, of Illinois citizens before we declared it facially unconstitutional in *Aguilar*, 2013 IL 112116. Although the majority is content to accept the dismissal of the void AUUW charges as defendant's sole remedy, subjecting him to prosecution for secondary charges premised on his arrest for that nonoffense, I am not.

¶ 50    What consolation is it for the State to drop the facially unconstitutional charges that prompted an arrest only to subject the very citizen whose rights were violated to additional felonies discovered after that arrest? It is, after all, this court's "duty not only to declare such a

legislative act void, but also to correct the wrongs wrought through such an act by holding our decision retroactive." *Gersch*, 135 Ill. 2d at 399. In its effort to avoid the harsh consequences sometimes resulting from the invalidation of legislation that tramples our citizens' fundamental rights, the majority overlooks the highly principled rationale underlying our void *ab initio* precedents. The ends thus achieved, however, cannot justify the means used to reach them under our case law.

¶ 51 To bolster its unjust conclusion, the majority also attempts to distinguish *Carrera* based on the nature of its underlying constitutional flaw. That attempt fails, however, by relying on a distinction without a difference. Although the statute in *Carrera* was declared unconstitutional for violating the state single subject rule, while the AUUW provision here violated the federal second amendment, that distinction is irrelevant. We expressly recognized as much when we explained that "[t]he void *ab initio* doctrine applies equally to legislative acts which are unconstitutional because they violate substantive constitutional guarantees [citation] and those that are unconstitutional because they are adopted in violation of the single subject clause of our constitution [citation]." *Carrera*, 203 Ill. 2d at 14-15. The majority's rejection of that conclusion contradicts *Carrera*'s clear directive.

¶ 52 Compounding its error, the majority announces this unprecedented limitation on the void *ab initio* doctrine without citation to any legal authority. *Supra* ¶ 19. No principled basis exists for granting relief under the void *ab initio* doctrine when the statute is unconstitutional on state grounds but denying the same relief when the constitutional problem is federal. It is inconceivable that this court would apply the void *ab initio* doctrine to grant the defendant in *Carrera* full relief, bypassing the fourth amendment issues raised, but deny this defendant any remedy by now choosing to focus on those same fourth amendment questions. As long as a statute is facially unconstitutional, on *any* basis, the core justifications for applying our void *ab initio* doctrine remain the same: to preserve our citizens' constitutional rights, to provide a full remedy for all legislative violations, and to discourage the future enactment of unconstitutional legislation.

¶ 53 Consistent with those principles, the legislature's direct violation of defendant's second amendment rights demands that he be granted full relief. The necessity of relief is even more obvious when the nature of the harm here is compared to *Carrera*. The statute granting the police extraterritorial jurisdiction to make arrests in *Carrera* was unconstitutional merely because it was improperly enacted; the statute's substantive constitutionality was never in question. *Carrera*, 203 Ill. 2d at 13-14. In other words, if the police had exercised exactly the same jurisdictional authority under a statute enacted as part of a legislative package addressing a single subject, the validity of Carrera's arrest would never have been in question. Nonetheless, despite the fact that the harm inflicted on Carrera was indirect, he received full relief from this court. In sharp contrast, the *substance* of the only offense underlying defendant's arrest here was unconstitutional on its face, invalidating each and every prosecution based on it, yet he receives no relief. The direct and personal nature of the constitutional wrong done to defendant, and to every other unfortunate soul arrested on facially unconstitutional charges, is palpable, magnifying, not diminishing, the need for a full judicial remedy. When viewed in that light, the injustice of the majority's disposition is manifest.

¶ 54 Further undercutting the majority's comparison of the state versus federal constitutional violations, blackletter law recognizes a blanket constitutional right to possess firearms

throughout the nation, with the federal right extended to the states through the application of the fourteenth amendment. *People v. Aguilar*, 2013 IL 112116, ¶ 17 (citing *McDonald v. City of Chicago*, 561 U.S. 742 (2010), for the proposition that the second amendment is applicable to the states through the due process clause of the fourteenth amendment); *Coram v. State of Illinois*, 2013 IL 113867, ¶ 49 (stating the same proposition); *Wilson v. County of Cook*, 2012 IL 112026, ¶ 11 (same). That constitutional mandate is thus no less a part of Illinois citizens' constitutional rights than is the single subject rule. Drawing invisible lines based on the origin of citizens' basic rights ignores their universality as well as what is at stake if they are disregarded.

¶ 55   The majority's additional attempts to distinguish *Carrera* due to the State's forfeiture of the fourth amendment questions there (*supra* ¶ 20) again contradict our express language. In discussing the alleged forfeiture, we stated that it was "not necessary *** to determine whether the State has waived the [exclusionary rule] argument" or "consider whether the alleged waiver must be excused under the circumstances at bar." *Carrera*, 203 Ill. 2d at 11. Thus, *Carrera* cannot be properly distinguished based on forfeiture because we never considered the forfeiture question on its merits. In fact, we declined to address the State's alleged forfeiture precisely because it was irrelevant to our decision.

¶ 56   Instead, we expressly "[chose] to resolve [the] cause on narrower grounds" than the fourth amendment. *Carrera*, 203 Ill. 2d at 13. And our failure to address those issues was not a mere oversight. Recognizing the critical role played by our state doctrine, we explained that "[t]he result that we reach[ed was] *dictated by application of the void ab initio doctrine*." (Emphasis added.) *Carrera*, 203 Ill. 2d at 13-14. The majority here, however, turns *Carrera* on its head, completely ignoring this court's stated preference for applying the void *ab initio* doctrine even when presented with fourth amendment matters potentially implicating limited lockstep.

¶ 57   The majority's analysis continues to ramp up the legal ambiguity, creating uncertainty over our abandonment of the test we mandated in *Krueger* "to delineate the scope of our state exclusionary rule." Under that test, we must " 'carefully balance the legitimate aims of law enforcement against the right of our citizens to be free from unreasonable governmental intrusion.' " *Krueger*, 175 Ill. 2d at 75 (quoting *People v. Tisler*, 103 Ill. 2d 226, 245 (1984)). We resolved that question in *Carrera* in favor of protecting our citizens' substantive rights when, as here, the arrest was premised on a facially unconstitutional statute. *Carrera*, 203 Ill. 2d at 14-15. Because "[a]n unconstitutional law 'confers no right, imposes no duty and affords no protection' " (internal quotation marks omitted) (*supra* ¶ 12), no duty exists to enforce an unconstitutional law, and conversely, the mere presence of a facially unconstitutional law on the books affords the State no protection for the consequences of any arrests based on it.

¶ 58   The murkiness of the opinion's rationale further deepens when it chooses to focus on probable cause rather than on our void *ab initio* doctrine. While the historical fact that probable cause existed at the time of the arrest undoubtedly cannot be altered at this late date, probable cause is not, and has never been, at issue here. The majority, however, uses the existence of contemporaneous probable cause to justify its decision to address fourth amendment matters rather than the effect of our void *ab initio* doctrine, contrary to our analysis in *Carrera*. *Supra* ¶¶ 36-37. In doing so, the majority answers the wrong question. The majority's discussion of probable cause is no more relevant here than a substantive analysis of the good-faith exception or the exclusionary rule was in *Carrera*. This case is not about whether probable cause can be

retroactively invalidated. This case involves only the suppression of evidence gathered after an arrest for a facially unconstitutional offense.

¶ 59 Just as we have never concerned ourselves with the good-faith exception's retroactive effect on probable cause, we should not concern ourselves now with the retroactive effect of the void *ab initio* doctrine on probable cause. The real question is limited to whether that doctrine creates a remedy for defendant following his arrest for a facially unconstitutional substantive offense. And we need not invalidate defendant's arrest for lack of probable cause to fashion the necessary remedy. We simply need to apply the void *ab initio* doctrine as we did in *Carrera*. We can, and should, rely on our own nonconstitutional precedents whenever possible. *People v. White*, 2011 IL 109689, ¶ 144 (explaining that constitutional challenges are addressed only when they are essential to the case's disposition). It is both unnecessary and unwise to consider whether probable cause is retroactively undermined by either fourth amendment considerations or our void *ab initio* doctrine.

¶ 60 Both *Carrera* and this case hinge exclusively on the application of our void *ab initio* case law, obviating any examination of forfeiture or fourth amendment questions. *Carrera*, 203 Ill. 2d at 11, 13-14. When applying the void *ab initio* doctrine, the policy considerations underlying probable cause, such as discouraging police misconduct, are irrelevant. The conduct of the police bears neither fault nor consideration in determining the proper outcome in this case. The only policy considerations that matter are those that historically animated our void *ab initio* doctrine. We adopted that doctrine to protect our citizens' rights from legislative overreach and to discourage the enactment of facially unconstitutional laws. *Carrera*, 203 Ill. 2d at 16. See also *Krueger*, 175 Ill. 2d at 72-75 (adopting similar rationale to the dissent in *Krull*, 480 U.S. at 361-69 (O'Connor, J., dissenting, joined by Brennan, Marshall, and Stevens, JJ.)). As we did in *Carrera*, we should apply the doctrine here to suppress the evidence gathered after defendant's arrest for a facially unconstitutional offense.

¶ 61 Attempting to find additional support for its departure from the strict application of our void *ab initio* doctrine, however, the majority turns to federal case law. Relying on *Michigan v. DeFillippo* and *United States v. Charles*, the opinion argues that "[f]ederal case law is clear that *** probable cause would not be retroactively invalidated by the subsequent invalidation of the statute" underlying defendant's arrest. *Supra* ¶ 29 (citing 443 U.S. 31, and 801 F.3d 855). Although that statement is correct as far as it goes, this is not a federal case, and this court is not bound by the federal case law cited. *People v. Radojcic*, 2013 IL 114197, ¶ 36. We may not abandon our own state doctrines based solely on contrary federal authority, at least not without properly justifying our break from *stare decisis*. In this case, the majority's unexplained break is particularly egregious because federal courts do not adhere to our unique construction of the void *ab initio* doctrine and, indeed, rarely even use that term. Because federal courts do not abide by our void *ab initio* jurisprudence, the rationale and outcomes in *DeFillippo* and *Charles* offer us absolutely no guidance here.

¶ 62 Indeed, the differing results in those cases should come as no surprise after this court's rejection in *Krueger* of the United States Supreme Court's similar position in *Krull*. Relying on the same policy rationales underlying our decision in *Carrera*, *Krueger* expressly rejected the holding in *Krull* that "the fourth amendment exclusionary rule does not bar the use of evidence seized by a police officer who reasonably relied, in objective good faith, on a statute that *** is later declared to be unconstitutional." *Krueger*, 175 Ill. 2d at 71. Instead, we knowingly

- 15 -

departed from lockstep in a fourth amendment case and adopted Justice O'Connor's *Krull* dissent, an opinion joined by Justices Brennan, Marshall, and Stevens. *Krueger*, 175 Ill. 2d at 71-75 (discussing *Krull*, 480 U.S. at 361-69). That dissent focused on the "serious threat to fourth amendment values" and liberty created by approving " 'a legislature's unreasonable authorization of searches [that] may affect thousands or millions.' " *Krueger*, 175 Ill. 2d at 72, 73 (quoting *Krull*, 480 U.S. at 365 (O'Connor, J., dissenting, joined by Brennan, Marshall, and Stevens, JJ.)). We reaffirmed that position just a few short years ago in *Fitzpatrick*, when we once again relied on Illinois's "*long-standing state tradition of excluding evidence obtained under the authority of an unconstitutional statute. Krueger*, 175 Ill. 2d at 74-75." (Emphasis added.) *People v. Fitzpatrick*, 2013 IL 113449, ¶ 16. I see no principled reason for rejecting that same rationale now, without explanation, following defendant's arrest for "something that was never a crime" (*People v. Shinaul*, 2017 IL 120162, ¶ 14). Unlike today's majority, I remain "[un]willing to recognize an exception to our state exclusionary rule that will provide a grace period for unconstitutional search and seizure legislation, during which time our citizens' prized constitutional rights can be violated with impunity." *Krueger*, 175 Ill. 2d at 75. In light of the facially unconstitutional offense in this case, the need for continuing this stance is even stronger. The majority's position would create a legislative grace period lasting at least 13 years and affecting innumerable Illinois citizens guilty of nothing more than the exercise of their constitutionally protected rights. *Krueger*, 175 Ill. 2d at 75 (relying on the same factors).

¶ 63    In light of our precedents applying the void *ab initio* doctrine rather than fourth amendment case law, the majority's discussion of limited lockstep remains a mystery. Despite recognizing our refusal to address the merits of the State's fourth amendment arguments in *Carrera*, 203 Ill. 2d at 12-14 (*supra* ¶ 18), the majority asserts that its result in this case is compelled by our adherence to fourth amendment jurisprudence (*supra* ¶¶ 28-29), raising new questions about the continuing validity of our contrary analyses in *Carrera* and *Krueger*, as well as other void *ab initio* decisions. Because the majority declines to overrule those precedents directly, it is apparently content to disavow them *sub silentio*.

¶ 64    The opinion is also surprisingly inconsistent with our statements in *People v. Caballes*:

> "Noting this state's history of applying the exclusionary rule under the state constitution as well as *a long-standing tradition of barring evidence gathered under the authority of an unconstitutional statute, this court rejected the Krull good-faith rule as creating a 'grace period for unconstitutional search and seizure legislation,' *** [and] 'knowingly depart[ed]' from the lockstep tradition* to give effect to another tradition—the exclusion of evidence gathered in violation of the state constitution's prohibition of unreasonable searches and seizures." (Emphasis added.) Caballes, 221 Ill. 2d at 302-03.

In *Caballes*, we also recognized that "*Krueger* was a case about remedies" and that lockstep was not implicated because in *Krueger* "[w]e construed state law as providing a remedy for the constitutional violation even though the federal constitution did not require one." *Caballes*, 221 Ill. 2d at 303. The same is true here. In the absence of a federal remedy, defendant seeks alternative relief under our state void *ab initio* doctrine, namely, the suppression of evidence obtained pursuant to his arrest on a facially unconstitutional offense. Despite this case being as much about remedies as *Krueger*, and contrary to our long-held state tradition of strictly

applying the void *ab initio* doctrine to facially unconstitutional criminal statutes, the majority rejects that analysis here.

¶ 65    To complete its discussion, the majority opinion concludes that strictly applying the void *ab initio* doctrine here would conflict with our decisions in *People v. McFadden*, 2016 IL 117424, and *People v. Blair*, 2013 IL 114122. While rejecting the argument that *McFadden* is distinguishable, the majority chides defendant for not explaining why the void *ab initio* doctrine would invalidate probable cause if it did not automatically invalidate the prior conviction in *McFadden*. Once again, because I believe the issue in this case is not properly defined by the doctrine's retroactive effect on probable cause, I cannot agree with the majority. The majority's focus in *McFadden* was on that defendant's felony status and the procedural hoops he was required to jump through before the State could be precluded from using his facially unconstitutional AUUW conviction as the predicate felony for a charge of unlawful use of a weapon by a felon filed years later. Because the majority's approach in that case discussed an entirely different question, I agree with defendant that *McFadden* is distinguishable.

¶ 66    This court's decision in *Blair* is equally inapt. There, the court was considering whether an amendment to the armed violence statute revived an armed robbery sentencing enhancement declared unconstitutional in *Hauschild*. We noted that the "actual existence" of the statute "is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration." (Internal quotation marks omitted.) *Blair*, 2013 IL 114122, ¶ 29. That explanation, however, begs the legal question here, when the issue is not even remotely similar. In truth, no remedial doctrine can ever alter historical fact. Our case law applying the void *ab initio* doctrine, however, has looked beyond historical fact to fulfill this court's duty to uphold the constitution and provide justice to those harmed by unconstitutional legislation. For example, our rejection of the Supreme Court's holding in *Krull* was due to our abiding concern over the creation of a grace period when the legislation could freely violate citizens' guaranteed rights. The same rationale supported our use of the void *ab initio* doctrine in *Carrera*. Our decisions in those cases were driven by our mandate to protect citizens' constitutional rights from legislative overreach and to provide an effective remedy when those rights are breached. Along with our other void *ab initio* precedents, *Carrera* and *Krueger* squarely put it within the power, and the inherent duty, of this court to remedy the consequences defendant faces here due solely to the enactment of the facially unconstitutional AUUW provision.

¶ 67    It is not enough simply to bar the prosecution of the facially unconstitutional offense while permitting a defendant to be tried for an offense discovered only later when " '[a]n invalid law is no law at all.' " (Internal quotation marks omitted.) *Gersch*, 135 Ill. 2d at 399 (quoting *Van Driel Drug Store, Inc. v. Mahin*, 47 Ill. 2d 378, 381 (1970), quoting *People ex rel. Barrett v. Sbarbaro*, 386 Ill. 581, 590 (1944)). Since our decision in *Blair*, we have reiterated that "a statutory section cannot be 'present' if it is void *ab initio*." *People v. Mosley*, 2015 IL 115872, ¶ 55. And, as even *Blair* recognized, " '[t]he effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment.' " *Blair*, 2013 IL 114122, ¶ 30 (quoting *Gersch*, 135 Ill. 2d at 390). Despite its stated reliance on *Blair*, the majority fails to apply that proposition here. If we apply the law as it stood prior to the enactment of the unconstitutional AUUW provision, defendant would not have been arrested,

and the FOID card violations would not have been discovered. To provide a complete remedy, therefore, we must suppress the post-arrest FOID card evidence.

¶ 68    To hold otherwise would open wide the judicial doors to abuse of our system of criminal justice. Imagine the myriad possibilities for abuse if citizens could be arrested for overtly unconstitutional offenses that were later nol prossed while the evidence obtained pursuant to those arrests was used to prosecute otherwise unreachable conduct. This court's longstanding formulation of the void *ab initio* doctrine was intended to prevent just that sort of misuse of legislative power.

¶ 69    When citizens become the unwitting victims of facially unconstitutional legislation, we must grant them the fullest relief possible in the interests of justice. Only in that way may the temptation to enact unconstitutional criminal statutes in the hopes of reaching secondary conduct be quelled. Otherwise, where is the justice for those citizens arrested during a judicially sanctioned legislative grace period for a statute that makes constitutionally protected acts illegal? The only truly effective, and just, relief is to suppress the evidence discovered after those arrests. Not only is that remedy straightforward and practicable, but it fulfills the vital principles underlying this court's formulation of the void *ab initio* doctrine.

¶ 70    In contrast, the result created by the majority's disposition sharply undercuts those goals. Because the majority's view "commands that which the Constitution denies the State the power to command and makes 'a crime out of what under the Constitution cannot be a crime,' " I dissent from its incremental, *sub silentio*, dismantling of our void *ab initio* doctrine. *Michigan v. DeFillippo*, 443 U.S. 31, 45 (1979) (Brennan, J., dissenting, joined by Marshall and Stevens, JJ.) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 616 (1971)). "[O]ur choice of a rule of decision on matters governed by both the state and federal constitutions has always been and must continue to be predicated on our best assessment of the intent of the drafters, the delegates, and the voters—this is our solemn obligation. In keeping with this obligation, *** this court adopted a limited lockstep approach in [*People v.*] *Tisler*[, 103 Ill. 2d 226 (1984),] and modified it in *Krueger* and *Washington* to allow consideration of state tradition and values as reflected by long-standing state case precedent." *Caballes*, 221 Ill. 2d at 313-14. Here, the strict application of the void *ab initio* doctrine in criminal cases is an enduring state tradition reflected in our case law. If nothing else, *stare decisis* dictates that we continue to apply that doctrine and suppress the evidence gathered against defendant after his arrest for "something that was never a crime" (*Shinaul*, 2017 IL 120162, ¶ 14).

¶ 71    If, however, the majority wishes to change course at this late date and vitiate our longstanding application of the void *ab initio* doctrine, it should do so forthrightly. While the majority's reluctance to admit its progressive eradication of the doctrine might be understandable if we were routinely confronted with harsh consequences from its application, that is far from true. "[T]he void *ab initio* doctrine does *not* apply to an as-applied constitutional challenge" (emphasis in original) (*People v. Thompson*, 2015 IL 118151, ¶ 32), and facial challenges remain the most difficult constitutional claims to mount (*People v. Davis*, 2014 IL 115595, ¶ 25). When raised, they are rarely successful. And even more rarely do the few successful challenges render void *ab initio* statutes defining criminal offenses, triggering the strict application of the doctrine.

¶ 72    The elimination of the void *ab initio* doctrine would, of course, require this court to reverse numerous well-reasoned precedents previously fundamental to our criminal jurisprudence.

Perhaps the need for special justification to break from *stare decisis* explains the majority's failure to acknowledge the serious impact its recent decisions have had on the viability of the doctrine. See *People v. Colon*, 225 Ill. 2d 125, 146 (2007) (explaining that every departure from *stare decisis* must be "specially justified" (internal quotation marks omitted)). Regardless of the source of the majority's refusal to address the doctrine's erosion, I choose to adhere to the case law we have so carefully fashioned to protect the fundamental rights of Illinois citizens.

¶ 73   Our continued adherence to the void *ab initio* doctrine in precedents such as *Carrera* is ultimately necessary because, when faced with "a statute [that] is violative of constitutional guarantees, we have a duty not only to declare such a legislative act void, but also to correct the wrongs wrought through such an act by holding our decision retroactive." *Gersch*, 135 Ill. 2d at 399. The doctrine represents this court's considered decision to preclude the creation of a grace period permitting our citizens to be arrested, prosecuted, and deprived of their liberty all for the simple exercise of their fundamental constitutional rights. It is the summation of the principles of justice that drove us to reject the Supreme Court's analysis in *Krull*, reverse the defendant's murder conviction and remand for a new trial in *Gersch*, and suppress the post-arrest evidence in *Carrera*. It is also the consideration that should animate this court's analysis in the present case. Both *stare decisis* and fundamental fairness demand no less. For that reason, I would continue to apply the void *ab initio* doctrine consistent with our established case law, and accordingly, I dissent from the majority opinion.