# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Vázquez*, 2011 IL App (2d) 091155

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM VÁZQUEZ, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-09-1155 |
| Filed | September 1, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for contributing to the delinquency of a minor and harboring a runaway were vacated and the cause was remanded for retrial where the trial court failed to properly admonish defendant before allowing him to represent himself, and on retrial, text messages defendant sent will not be considered discoverable "inculpatory statements" under the rule in *Schmidt*. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 05-CM-6830; the Hon. Ronald D. Sutter, Judge, presiding. |
| Judgment | Vacated and remanded. |

| Counsel on Appeal | Thomas A. Lilien and Darren E. Miller, both of State Appellate Defender's Office, of Elgin, for appellant. |
| | Joseph E. Birkett, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justice Burke concurred in the judgment and opinion.<br>Justice McLaren specially concurred, with opinion. |

## OPINION

¶ 1    A jury convicted defendant, William Vázquez, of two misdemeanors: contributing to the delinquency of a minor (720 ILCS 130/2a (West 2004)) and harboring a runaway (720 ILCS 5/10-6(b) (West 2004)). On appeal, defendant argues, and the State agrees, that the trial court failed to properly admonish him as required by Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before permitting him to conduct his own defense. They also agree that defendant's convictions cannot stand. However, defendant argues that, under the rule in *People v. Campbell*, 224 Ill. 2d 80, 87-88 (2006), because he has fully served his sentence, the proper remedy is vacatur of his convictions without remand for retrial. The State argues that *Campbell* is not decisive on the issue and that retrial is the proper remedy. We agree with the State. We conclude that *Campbell* is distinguishable and that under these facts defendant may be retried.

¶ 2    Defendant also argues that, under the rule in *People v. Schmidt*, 56 Ill. 2d 572 (1974), because the State did not disclose a transcript of certain text messages that he had sent, it could not use the transcript as evidence. Given that the transcript was never disclosed, the underlying issue of whether it was subject to *Schmidt* discovery is an issue that may recur on retrial and thus we address it. We conclude that the transcript is not discoverable.

¶ 3                          BACKGROUND

¶ 4    Defendant was charged with contributing to the delinquency of a minor and harboring a runaway (both involving Brandon P.). At an initial hearing on December 22, 2005, the judge asked defendant only if he needed time to hire an attorney. When defendant asked to make an oral motion to dismiss, the judge told defendant that he had the right to represent

himself. Defendant responded that he had done so "in this district and the 1st district, federal district, Boston District" and was "prepared to move forward." The judge responded, "I just need to caution you that if you're not a lawyer[–]." Vasquez replied, for the record, that he understood. The judge said, "Understand it's my job," and defendant responded, "Yes." The judge also advised defendant that he was entitled to discovery as required by *Schmidt*, under which a misdemeanor defendant is entitled to "a list of witnesses [citing what is now section 114-9(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114-9(a) (West 2008))], any confession of the defendant [citing what is now section 114-10(a) of the Code (725 ILCS 5/114-10(a) (West 2008)), and] evidence negating the defendant's guilt [citing *Brady v. Maryland*, 373 U.S. 83 (1963)]." *Schmidt*, 56 Ill. 2d at 575.

¶ 5        Shortly after the hearing just described, defendant filed a motion to dismiss in which he denied the factual basis of the charges and claimed that Brandon had been physically abused and neglected by his father. On February 28, 2006, Greg P., Brandon's father, filed a petition for an emergency order of protection to bar defendant from contact with Brandon. The petition for an order of protection, though filed under the misdemeanor case number, was heard by a different judge.

¶ 6        On October 20, 2006, the judge handling the order-of-protection matter held a hearing on a plenary order of protection. The judge became concerned that defendant was not aware that the State could use his testimony against him in the criminal proceedings. As part of the ensuing discussion, the court advised defendant of his right to appointed counsel:

"If you choose to consult an attorney before proceeding, you have the right to do that. If you–and if you cannot afford one, as I know, in other cases, I've advised you, you have the right to fill out an affidavit of assets and liabilities to see if you qualified under the poverty guidelines. And if you cannot afford an attorney, then under those circumstances, an attorney would be appointed for you."

¶ 7        Defendant's trial, which was before a jury, did not take place until March 2008. At trial, the State presented evidence tending to show that Brandon was a runaway and that defendant had allowed Brandon to live with him, had condoned Brandon's use of alcohol, and had allowed Brandon, who lacked a driver's license, to drive a truck. Defendant testified that he had encountered Brandon when Brandon was homeless and that he did not allow Brandon to drink or drive.

¶ 8        On cross-examination, the State asked defendant about four text messages that it asserted he had sent to Brandon's cell phone. Defendant admitted that he had sent one that said, "No truck for you tonight." He denied sending others suggesting that Brandon should limit his driving, saying that Brandon had smelled like beer, and complaining that Brandon had left him "one hit" and that "it" had better be replaced. Defendant asked to look at the transcript of the messages, but the court denied the request. He then objected that he had not received the transcript during discovery. The court told the State to continue with the examination. The State called Brandon as a rebuttal witness; he testified to receiving the texts from defendant.

¶ 9        The jury found defendant guilty on both counts. Defendant then requested the appointment of the public defender, explaining that he felt out of his depth and that he no

-3-

longer had any source of income. He further said that a federal court had found him to be indigent. The court refused to appoint counsel, noting that the presentencing report indicated that defendant had funds to sustain himself for two months.

¶ 10    The court sentenced defendant to concurrent terms of 24 months of probation with 180 days in jail. Defendant again requested counsel, and this time the court appointed the public defender. Counsel filed a motion for a new trial, asserting, among other things, that the State had not laid an adequate foundation for the introduction of the text messages. The motion did not raise either of the matters at issue in this appeal. The court denied the motion.

¶ 11    Defendant moved in this court for leave to file a late notice of appeal, and this court granted that motion. Defendant raises two issues. He argues primarily that he did not receive the admonishments that Rule 401(a) requires and that this was reversible as plain error. Secondarily, he argues that the State violated his *Schmidt* discovery rights by failing to tender the text-message transcript.

¶ 12    As we noted, the State and defendant agree that the admonishments were insufficient under Rule 401(a) and they agree that we can review the failure as reversible plain error. However, they disagree about the proper remedy. The State has not conceded any error with regard to the transcript.

¶ 13                                II. ANALYSIS

¶ 14    We agree with the State and defendant that the admonitions to defendant were fatally defective and that this was reversible plain error. Rule 401(a) requires that the court advise a defendant of the nature of the charge, the minimum and maximum sentences possible, and the right to counsel, including the right of an indigent defendant to appointed counsel. "[S]ubstantial compliance with Rule 401(a) is required for an effective waiver of counsel." *Campbell*, 224 Ill. 2d at 84. Where a court has not advised a defendant of, among other things, the possible penalties for an offense, substantial compliance has not occurred. *E.g.*, *People v. Childs*, 278 Ill. App. 3d 65, 74 (1996). Because the right to counsel is fundamental, an appellate court may review a failure to substantially comply with Rule 401(a) under the plain-error doctrine despite a defendant's failure to properly preserve such an error. *People v. Vernon*, 396 Ill. App. 3d 145, 150 (2009); *People v. Stoops*, 313 Ill. App. 3d 269, 273 (2000).

¶ 15    Here, we find in the record no time at which the court advised defendant of the nature of the charges or the minimum penalties. A judge, other than the trial judge, did advise defendant of the right to appointed counsel, but only in the related order-of-protection hearing and well after the proceedings began. Given the basic flaws in the admonishments, we agree that the court failed to substantially comply with Rule 401(a), such that vacatur of the convictions is necessary.

¶ 16    Having agreed that the convictions must be vacated, the parties dispute whether the case should be remanded for retrial. The dispute arises from the wording of *Campbell*, a supreme court case with facts similar to those here. In *Campbell*, the defendant was charged with a misdemeanor traffic offense, was not properly admonished of the right to counsel, was convicted without having counsel, and had completed his sentence by the time of the

appellate decision. The *Campbell* court held that, in that case, retrial would serve no good purpose:

> "Ordinarily, [the lack of admonishments] would compel the reversal of defendant's conviction and a remand for a new trial. In this case, however, defendant has already discharged his sentence, and a new trial therefore would be neither equitable nor productive. Accordingly, we agree with the appellate court's conclusion that defendant's conviction must be vacated." *Campbell*, 224 Ill. 2d at 87-88.

Defendant argues that he is almost identically situated and that we should similarly conclude that retrial would serve no good purpose. The State implies that the circumstances in *Campbell* are distinguishable because of the disparity in the seriousness of the defendants' offenses, pointing to the fact that the defendant in *Campbell* was convicted of driving with a suspended license. *Id.* at 82-83. We agree.

¶ 17    In light of *Campbell*, we are called upon to decide whether retrial in this case would be neither equitable nor productive. We conclude that retrial would be both equitable and productive.

¶ 18    We examine the quoted language from *Campbell*. Although we appreciate defendant's position that the quoted passage could be read to say that the fact that the defendant had discharged his sentence directly implied that a new trial would be "neither equitable nor productive" (*Id.* at 87-88), such a reading is insensitive to the particular facts of that case, its context, and other language. The quoted passage contains the phrase, "In this case," which, read in context, would limit the decision to its facts. We note that, generally, vacatur of a conviction is followed by remand for retrial, and we conclude that a decision to vacate a defendant's conviction without remand for retrial must be limited to the facts of *Campbell*. We note further that the *Campbell* court's reasoning was that retrial would be neither equitable nor productive. The court did not elaborate on which facts or circumstances it considered in concluding that retrial would be neither equitable nor productive, nor did it enunciate factors to guide future courts. In the absence of such guidance, we must look to the facts upon which the decision was based. In *Campbell*, the facts included both that the defendant served his complete sentence *and* that the charge at issue was a misdemeanor traffic offense–driving with a suspended licence.

¶ 19    We acknowledge that here defendant has completed his sentence but conclude that the charges in question are significantly different. We cannot reasonably apply *Campbell*'s holding to criminal convictions of a very different character from the one involved in *Campbell*.

¶ 20    The *Campbell* defendant's offense, driving with a suspended license, is, of course, a traffic offense and not one that inherently involves danger to the public. To the contrary, defendant here was charged with harboring a runaway and contributing to the delinquency of that minor, offenses that inherently involve harm and danger. Further, these offenses are directed against minors, who are most vulnerable and thus most in need of protection.

¶ 21    There is nothing inequitable in allowing the State the opportunity to obtain convictions for wrongdoing, even if the court is ultimately unable to impose any additional penalty. A criminal conviction means something. Its presence in a criminal history has value to the State

in its role as prosecutor. The presence or absence of a criminal conviction may be a factor in charging a potential defendant. It may impact whether a plea agreement is offered and certainly will impact the nature of the offer. A prior conviction may be used in aggravation in a future sentencing hearing without placing upon the State the additional burden of producing a minor or other witness to testify. While these factors could apply to all convictions, we conclude that the implications noted here are enhanced with the severity of the offense at issue. In other words, the more severe the offense at issue, the greater the importance of the conviction. The existence of these possibilities makes retrial here both equitable and productive. Thus, we deem that *Campbell* is distinguishable on its facts and conclude that, because defendant was charged with contributing to the delinquency of a minor and harboring a runaway, remand for retrial is both equitable and productive.

¶ 22    We now turn to the State's use of the text-message transcript, which, in the context of retrial, we treat as a question of the scope of *Schmidt* discovery. Because any retrial will not follow precisely the same path as the original trial, the precise manner in which the State introduced the content of the text-message transcript is no longer relevant. However, because defendant never saw the full transcript, whether he is entitled to its disclosure is not moot. The rule in *Schmidt* entitles a misdemeanor defendant to disclosure of "confession[s]." *Schmidt*, 56 Ill. 2d at 575. Defendant implies that another supreme court case, *People v. Williams*, 87 Ill. 2d 161, 165 (1981), effectively expanded that entitlement to include any "inculpatory statements." We conclude that *Williams* should not be read as an expansion of *Schmidt*, and that, in any event, the transcript does not contain "inculpatory statements."

¶ 23    *Schmidt*, although a 1974 decision, remains the standard citation for the sources of law under which a misdemeanor defendant is entitled to discovery. Per *Schmidt*, such a defendant is entitled to "a list of witnesses [citing what is now section 114-9(a)], any confession of the defendant [citing what is now section 114-10(a), and] evidence negating the defendant's guilt [citing *Brady*]." *Schmidt*, 56 Ill. 2d at 575.

¶ 24    Section 114-10(a) provides:

"On motion of a defendant in any criminal case made prior to trial the court shall order the State to furnish the defendant with *a copy of any written confession made to any law enforcement officer of this State* or any other State and a list of the witnesses to its making and acknowledgment. If the defendant has made an oral confession a list of the witnesses to its making shall be furnished." (Emphasis added.) 725 ILCS 5/114-10(a) (West 2008).

¶ 25    Most cases, including *Schmidt* itself, use the word from the statute, "confession," to describe what the State must disclose (*Schmidt*, 56 Ill. 2d at 575), and an entire line of cases specifically holds that the statute covers only confessions in the strict sense, and not merely admissions. For instance, in *People v. Brown*, 106 Ill. App. 3d 1087, 1091 (1982), an appellate panel followed that narrow interpretation:

"In the present case *** it is apparent that the statement in question was not a confession[,] which is ' "a voluntary acknowledgment of guilt after the perpetration of an offense, and it does not embrace mere statements or declarations of independent facts from which guilt may be inferred." ' [Citation.] Here, section 114-10 does not apply

since defendant's statement that he threw a gun out of his window was not an acknowledgment of guilt for the crime of rape but was, at most, a declaration of an independent fact from which guilt could be inferred."

¶ 26    Despite such precedent, and despite the language of *Schmidt* itself, defendant cites *Williams*, 87 Ill. 2d at 165, for the proposition that all "inculpatory statements" fall within the scope of *Schmidt* discovery. Defendant's reading of *Williams* is a natural, if superficial, reading of certain language in the decision. However, that reading of *Williams*–a case that was not even concerned with discovery of confessions or the like–is not a good statement of Illinois law.

¶ 27    At issue in *Williams* was whether the court could require the defendant in a misdemeanor case to disclose his witnesses. *Williams*, 87 Ill. 2d at 164. In particular, the question was whether the holding in *Schmidt* left room for a trial court to order additional kinds of discovery at its own discretion. A discussion of the *Schmidt* court's intent on that point produced the following passage, the passage on which defendant relies:

> "In *Schmidt*, the court noted certain instances whereby discovery procedures would be allowed in nonfelony cases. These procedures include providing the defendant with a list of witnesses, the results of any breathalyzer test, *any inculpatory statements made by the defendant*, and any evidence which tends to negate the defendant's guilt. [Citation.] These limited additional provisions arose under case law and statutes which we do not consider in conflict with the discovery rules. It is noteworthy that none of the allowable disclosures accord the State discovery rights in misdemeanor cases." (Emphasis added.) *Id.* at 165.

Given the issue before the *Williams* court, the passage in question can be read only as a less-than-carefully worded attempt to summarize *Schmidt*. We therefore conclude that, in spite of the language in *Williams*, a misdemeanor defendant is entitled to disclosure of *confessions*.[1] The text messages were not acknowledgments of guilt, and so were not confessions and thus not discoverable.

¶ 28    That said, even if we assumed that, under *Williams*, the State must disclose all "inculpatory statements," we nevertheless would not conclude that such a rule would require the State to disclose the transcript of the text messages. In Illinois at least, the phrase "inculpatory statements" is not a term of art with a formal definition established by statute or precedent. Our own sense of the normal usage is that the phrase refers to postoffense statements of a defendant that, although not necessarily confessions in the strict sense, nevertheless tend to incriminate him or her. Thus, if a witness hears a perpetrator saying, "hand over the money or I'll shoot you," that, because it is not postoffense, is *not* an "inculpatory statement" according to ordinary usage. Our sense of the language is reinforced by learning that, in Louisiana, where a statute requires the state to disclose "inculpatory statements," the definition of an inculpatory statement is "an out of court admission of

---

[1]We do not here address the issue of whether, per section 114-10(a), the only disclosable confessions are those "made to any law enforcement officer of this State" (725 ILCS 5/114-10(a) (West 2008)), or whether, per a literal reading of *Schmidt*, the State must disclose *any* confession.

incriminating facts made by the defendant after the crime has been committed." *State v. Curington*, 09-867, at 9 (La. App. 5 Cir. 10/26/10); 51 So. 3d 764. We deem the text messages to be concurrent with the commission of the alleged offenses rather than postoffense admissions. Thus, even under the looser standard advocated by defendant, the text-message transcript is not discoverable.

¶ 29                                III. CONCLUSION

¶ 30     For the reasons stated, we vacate defendant's convictions and remand the matter for proceedings consistent with this decision.

¶ 31     Vacated and remanded.

¶ 32     JUSTICE McLAREN, specially concurring:

¶ 33     I write to address several points.

¶ 34     First, the majority's analysis conflates the holding of *Campbell* with its rationale. The application of the holding of *Campbell* to this case is inapt because the facts are substantially dissimilar. The majority's suggestion that the charges in this case are more serious than the offense in *Campbell* is questionable and essentially immaterial. The seriousness of the offense is of little importance if, as in *Campbell*, an enhanced punishment was provided for a subsequent offense.

¶ 35     Second, I do not agree with all the reasons given by the majority as to why the State has a valid reason to retry the cause. The analysis regarding the claim that the offenses charged involve inherently harmful or dangerous activities does not apply to the charge of harboring a runaway. In fact, defendant claimed that he was harboring the minor because the minor was being physically abused and neglected by a parent. Under the statute, this mitigating and exculpatory factor would not preclude conviction. However, the statute allows an exemption for certain entities that are reasonably presumed to be reliable harborers of minors, such as youth emergency shelters and agencies providing crisis intervention services. See 720 ILCS 5/10-6(a) (West 2008). Further, proof of the infliction of harm, danger, or injury to the minor is not required in order to establish the offense. It is difficult to understand how harm, danger, or injury is deemed important for reprosecution when it is not an element of the offense. The State could achieve some of the goals cited without obtaining a conviction. However, a conviction would make it simpler for the court to punish any future acts that would endanger minors, by taking judicial notice of the conviction. The State did not argue that the conviction would require future restrictions on defendant. Were defendant, upon conviction, required to fulfill duties and obligations *in futoro*, the need for a conviction to impose these conditions would be manifest. I concur in remanding for retrial based upon the particular facts in this case. The reasons given by the State reasonably outweigh the costs of further prosecution. Additionally, while case law has indicated that the State has been known to vindictively reprosecute defendants after vacated or reversed convictions (see *People v. Brexton*, 405 Ill. App. 3d 989 (2010)), the record does not indicate such a motive here.

¶ 36	Third, the general principle that a defendant may be retried so long as jeopardy has not attached would apply here, and *Campbell* would not alter the application of this principle to this case:

> "At common law a convicted person could not obtain a new trial by appeal except in certain narrow instances. As this harsh rule was discarded courts and legislatures provided that if a defendant obtained the reversal of a conviction by his own appeal he could be tried again for the same offense. Most courts regarded the new trial as a second jeopardy but justified this on the ground that the appellant had 'waived' his plea of former jeopardy by asking that the conviction be set aside. Other courts viewed the second trial as continuing the same jeopardy which had attached at the first trial by reasoning that jeopardy did not come to an end until the accused was acquitted or his conviction became final. But whatever the rationalization, this Court has also held that a defendant can be tried a second time for an offense when his prior conviction for that same offense had been set aside on appeal." *Green v. United States*, 355 U.S. 184, 189 (1957).

¶ 37	Finally, defendant's sentence has been satisfied. It no longer pends. It is completed. Thus, any sentence upon reconviction would be a second punishment for the same event. See *People v. Miller*, 238 Ill. 2d 161, 174 (2010) ("The double jeopardy clause protects against, *inter alia*, multiple punishments for the same offense."). Were defendant to be convicted after a new trial, the trial court may only sentence defendant up to the same sentence imposed before and then declare it satisfied and discharged.