# Illinois Official Reports

## Appellate Court

---

### *People v. Nemec*, 2019 IL App (2d) 170382

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM L. NEMEC, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-17-0382 |
| Filed | April 24, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Carroll County, No. 14-DT-75; the Hon. John F. Joyce, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Jaime L. Montgomery, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Scott L. Brinkmeier, State's Attorney, of Mt. Carroll (Patrick Delfino, David J. Robinson, and Sally A. Swiss, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Justices McLaren and Jorgensen concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant, William L. Nemec, appeals from an order of the circuit court of Carroll County revoking his court supervision for driving under the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2014)), entering a judgment of conviction, and ordering him to pay all remaining fines and fees. On appeal, defendant argues that he was deprived of his right to counsel where he represented himself at his revocation hearing without being admonished of or waiving his right to counsel. For the reasons that follow, we vacate the order and remand for further proceedings.

¶ 2                            I. BACKGROUND

¶ 3    On August 29, 2014, defendant was charged by complaint with DUI (*id.*), a Class A misdemeanor traffic offense (*id.* § 501(c)(1)). On October 20, 2014, at defendant's first appearance, the State advised the trial court that defendant had other traffic cases pending for which the public defender had been requested and appointed. The State further advised that defendant had requested that the public defender be appointed to represent him on the DUI charge. The trial court asked defendant whether his financial situation had changed since the public defender had first been appointed, and defendant replied that it had "gotten worse." The trial court appointed the public defender.

¶ 4    On May 1, 2015, the parties informed the trial court that an agreement had been reached with respect to numerous charges against defendant, including the DUI charge.[1] Pursuant to the agreement, defendant pleaded guilty to DUI and was placed on 24 months' court supervision and ordered to pay various fines and costs by September 30, 2016.

¶ 5    On January 3, 2017, the State petitioned to revoke court supervision, alleging that defendant willfully failed to pay his fines and costs by September 30, 2016.

¶ 6    On February 6, 2017, defendant appeared without counsel. The trial court, after noting that defendant was *pro se*, stated as follows:

> "[Defendant], on May 1, 2015, you were admitted to 24 months of court supervision for a DUI. The Petition to Revoke alleges that you failed to pay your fines and costs. If the State can show by a preponderance of the evidence that you did something you weren't suppose [*sic*] to do or you didn't do something you were suppose [*sic*] to do, then your supervision could be revoked and if it was revoked a conviction could enter which would have a serious effect on your driving privileges.
>
> You could be resentenced to a period of up to one year in the Carroll County Jail. You also could have your fine increased to an amount not to exceed $2,500.00. Your period of time being on probation or supervision is already maxed out at the 24 months.

___

[1]Pursuant to the agreement, defendant pleaded guilty and convictions were entered in the following cases: 14-TR-611 (court costs imposed), 14-TR-612 (court costs imposed), 14-TR-613 ($350 fine and court costs imposed), 14-TR-614 (court costs imposed), 14-TR-1267 (court costs imposed), 14-TR-1270 (court costs imposed), 14-TR-1272 (court costs imposed), and 14-TR-1274 (court costs imposed). The following cases were dismissed: 14-TR-615, 14-TR-616, 14-DT-74, 14-TR-1268, 14-TR-1269, 14-TR-1271, and 14-TR-1273. Defendant was ordered to pay $50 per month to cover the fine and costs in these cases.

So where are we going with [defendant]?"

The State asked for a hearing, and the trial court set the matter for March 17, 2017.

¶ 7        At the start of the revocation hearing on March 17, 2017, the trial court again noted that defendant was appearing without counsel. The State asked the court to take judicial notice of the court file and the outstanding balance of $1657. The court asked defendant if he had paid the balance. Defendant indicated that he had paid the costs imposed with respect to his other cases but that he had not paid those imposed for the DUI. He asked the court to give him 90 days to sell certain equipment so that he could make the payment. The court told defendant that it just wanted to know if defendant had paid the balance that was due. Defendant again stated that he had not.

¶ 8        The State called defendant to testify. Defendant testified that his only source of income was $1288 per month in Social Security. Defendant testified to his monthly expenses and testified that, since August, he had also spent $2000 to run for mayor. After the State rested its case, defendant explained that he had been trying to sell various pieces of construction equipment but that it had cost money to get the equipment into selling condition and to run advertisements in local papers.

¶ 9        The trial court held defendant in contempt of court, finding that defendant's failure to pay was willful and wanton, specifically noting that defendant had "chosen to pay other things." The matter was set for sentencing. The court then advised defendant as follows:

> "Now let me tell you what my options are. Okay. I can revoke your supervision. If I do that, then I can sentence you to a period not to exceed one year in the Carroll County Jail, number one.
>
> Number two, a conviction would be entered which means then you'll definitely never drive again and you'll have a criminal record.
>
> Option number three, I could increase your fine. Okay. That could only go up another seven hundred and some bucks. You can't pay $1,700.00. I don't think you're going to be able to pay $2,500."

The court further advised defendant that, with respect to the finding of contempt, it could either fine defendant or incarcerate him for up to six months.

¶ 10        The sentencing hearing took place on April 24, 2017. At the outset of the hearing, defendant told the court that he had mailed in an application to have the public defender appointed. The court noted that defendant filed his financial affidavit on April 19, 2017. The court then stated: "So you're asking now that we've gone through a hearing on this and all of the continuances, now at this point when it comes to settling—sentencing, you're asking for a Public Defender?" Defendant responded, "Well, I guess I could have asked a long time ago, but that's something that I evidently didn't do." The State asked the court to deny defendant's request to have the public defender appointed. The court did so, and the matter proceeded.

¶ 11        The State asked the court to take judicial notice of defendant's failure to pay since the revocation hearing, which the court did. Defendant then testified on his own behalf.

¶ 12        Following defendant's testimony, the trial court revoked defendant's supervision, entered a judgment of conviction, and ordered defendant to pay off the remaining fines and costs at a rate of $100 per month until March 28, 2018.

¶ 13    Defendant timely appealed.

¶ 14                    II. ANALYSIS

¶ 15    Defendant argues that he was deprived of his right to counsel where he represented himself at his revocation hearing without first being admonished of or waiving his right to counsel. In response, the State maintains that defendant knowingly and intelligently waived his right to counsel where the trial court substantially complied with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) and where, despite not being told of his right to counsel, the record shows that defendant was aware of that right but chose not to be represented at the revocation hearing.

¶ 16    Initially, we note that defendant forfeited the issue by failing to raise it below. Nevertheless, "[b]ecause the right to counsel is fundamental, an appellate court may review a failure to substantially comply with Rule 401(a) under the plain-error doctrine despite a defendant's failure to properly preserve such an error." *People v. Vázquez*, 2011 IL App (2d) 091155, ¶ 14.

¶ 17    There is no question that defendant had a statutory right to counsel at the hearing on the State's petition to revoke his supervision. See 730 ILCS 5/5-6-4(c) (West 2016) ("The evidence [at a hearing on a petition to revoke supervision] shall be presented in open court with the right of confrontation, cross-examination, and representation by counsel."); see also 725 ILCS 5/113-3(b) (West 2016) ("In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel."); *People v. Campbell*, 224 Ill. 2d 80, 85 (2006) ("[E]ven if defendant did not possess a sixth amendment right to counsel in this case, he *did* possess a statutory right to counsel, as this was not a case in which the penalty imposed was a fine only." (Emphasis in original.)). Therefore, prior to allowing defendant to represent himself, the trial court was required to obtain a waiver of defendant's right to counsel pursuant to Rule 401(a). See *People v. Wright*, 2017 IL 119561, ¶ 41 ("[C]ompliance with Rule 401(a) is required for an effective waiver of counsel.").

¶ 18    Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) states as follows:

"(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court."

"The purpose of Rule 401(a) is to ensure that any waiver of counsel will constitute the intentional relinquishment of a known right." *People v. Ames*, 2012 IL App (4th) 110513, ¶ 29. Our supreme court has noted, " '[S]trict technical compliance with Rule 401(a) *** is not always required. Rather, substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the

admonishment the defendant received did not prejudice his rights.' " *Wright*, 2017 IL 119561, ¶ 41 (quoting *People v. Haynes*, 174 Ill. 2d 204, 236 (1996)).

¶ 19 The State argues that, because the trial court substantially complied with Rule 401(a) and because defendant was aware of his right to counsel, his "waiver" was effective. The trial court admonished defendant in accordance with sections (a)(1) and (a)(2) of Rule 401, but it did not admonish defendant in accordance with section (a)(3). To be sure, as noted by the State, courts have found effective waivers of counsel where there had been no admonishment of the right to counsel. See *People v. Phillips*, 392 Ill. App. 3d 243, 260-61 (2009) (the defendant's "clear and unequivocal waiver," which he made several times, was valid, despite the trial court's failure to admonish him of the nature of the charge or of his right to counsel, where the defendant was represented by appointed counsel and counsel was present when the defendant expressly stated that he wished to represent himself); *People v. Jackson*, 59 Ill. App. 3d 1004, 1008 (1978) (the defendant knew of his right to counsel, despite not being admonished of that right, where the defendant had been represented by the public defender until he discharged him against the advice of the trial court, and thus the defendant's waiver of counsel was valid).

¶ 20 Here, however, unlike in the cases cited above, we are not asked to consider whether defendant's express request to proceed *pro se* was made knowingly, despite the trial court's incomplete admonishments, because defendant never made such a request. In order to accept the State's argument that defendant knowingly waived counsel, we would have to find that defendant's silence after the trial court noted that he was appearing *pro se* constituted an "intentional relinquishment of a known right." See *Ames*, 2012 IL App (4th) 110513, ¶ 29. Given the trial court's failure to admonish defendant that he had the right to counsel at the revocation hearing, we will not make such a finding, as the record does not support an inference that defendant knew of his right to counsel. We reject the State's argument that defendant's statement at the beginning of the sentencing hearing—"[w]ell, I guess I could have asked a long time ago, but that's something that I evidently didn't do"—indicated that he knew of his right to counsel when he appeared at the revocation hearing. Indeed, defendant could have learned of the right *after* the revocation hearing and only now realized that he "could have asked a long time ago." And although defendant was represented by the public defender when he pleaded guilty in the present case, he was not represented when he first appeared on the petition to revoke supervision, a distinct proceeding. In fact, he was never represented with respect to the petition. Thus, we cannot infer that defendant knew that he had a right to counsel on the petition.

¶ 21 Based on the foregoing, we find that, under the circumstances presented here, the trial court's failure to admonish defendant of his right to counsel and failure to obtain a knowing waiver of counsel constituted plain error, and thus the order granting the petition to revoke supervision, as well as the conviction, must be vacated.

¶ 22 The question becomes whether the case should be remanded for a new hearing on the petition. Defendant, relying on *Campbell*, argues that, because he has since complied with the terms of his court supervision, a remand would be neither equitable nor productive. In *Campbell*, following a bench trial, the defendant was found guilty of driving on a suspended license. *Campbell*, 224 Ill. 2d at 83. He was sentenced to 12 months' conditional discharge, ordered to pay a $100 fine, and ordered to perform 240 hours' community service. *Id.* On appeal, the defendant argued that his conviction should be reversed because the trial court

accepted his waiver of counsel without complying with Rule 401(a). *Id.* At the time of appeal, his sentence had been fully discharged. The supreme court agreed with the defendant, holding that, where there was no compliance, substantial or otherwise, with Rule 401(a), the defendant's waiver of counsel was ineffective. *Id.* at 84-85. The court vacated the defendant's conviction of DUI outright, noting that the "defendant has already discharged his sentence, and a new trial therefore would be neither equitable nor productive." *Id.* at 87. The State filed a petition for rehearing, arguing that vacating the defendant's conviction conferred a " 'windfall' " on him. *Id.* at 88 n.1. The State requested a new trial. *Id.* The court rejected the State's argument and stated, in relevant part, as follows:

> "We question whether defendant would perceive himself the beneficiary of a 'windfall,' having already served the 12 months of conditional discharge, performed the 240 hours of community service, and paid the $100 fine imposed in this case. In any event, the State did not raise this argument in its brief and therefore under Supreme Court Rule 341(e)(7) *** may not raise it in arguing for rehearing." *Id.*

¶ 23    The State, relying on *Vázquez*, 2011 IL App (2d) 091155, argues that we should remand the cause for a new hearing on the petition to revoke supervision. In *Vázquez*, the State charged the defendant with two misdemeanors: contributing to the delinquency of a minor and harboring a runaway. *Id.* ¶ 4. The defendant waived his right to counsel and proceeded to a jury trial. *Id.* ¶¶ 4, 9. The jury found the defendant guilty on both counts, and the court sentenced him to concurrent terms of probation, with 180 days in jail. *Id.* ¶¶ 9-10. The defendant appealed, arguing, *inter alia*, that he did not receive sufficient Rule 401(a) admonishments and that the court should vacate his conviction because he had already completed his sentence. *Id.* ¶ 1. The State conceded that the admonishments were insufficient, but it disagreed as to the appropriate remedy. *Id.* ¶ 12. The defendant argued that he was almost identically situated to the defendant in *Campbell* and that a retrial would serve no good purpose. *Id.* ¶ 16. The State responded that the defendant's case was distinguishable from *Campbell* due to a disparity in the seriousness of the offenses. *Id.* We agreed with the State and held that a retrial would be both equitable and productive. *Id.* ¶¶ 16-17. We discussed *Campbell*'s holding and concluded, in relevant part, as follows:

> "We note that, generally, vacatur of a conviction is followed by remand for retrial, and we conclude that a decision to vacate a defendant's conviction without remand for retrial must be limited to the facts of *Campbell*. We note further that the *Campbell* court's reasoning was that retrial would be neither equitable nor productive. The court did not elaborate on which facts or circumstances it considered in concluding that retrial would be neither equitable nor productive, nor did it enunciate factors to guide future courts. In the absence of such guidance, we must look to the facts upon which the decision was based. In *Campbell*, the facts included both that the defendant served his complete sentence and that the charge at issue was a misdemeanor traffic offense—driving with a suspended license." (Emphasis omitted.) *Id.* ¶ 18.

As a result, we declined to apply *Campbell* to "criminal convictions of a very different character from the one involved in *Campbell*." *Id.* ¶ 19. In further distinguishing *Campbell*, we emphasized that driving with a suspended license is a traffic offense that does not inherently involve danger to the public, in contrast to the defendant's charges of harboring a runaway and contributing to the delinquency of a minor, which are offenses directed against minors, who are most vulnerable and in need of protection. *Id.* ¶ 20.

¶ 24     Based on our reasoning in *Vázquez*, we agree with the State that a remand is warranted. Like *Vázquez*, the present case is readily distinguishable from *Campbell* based on the seriousness of the offense at issue. Here, defendant pleaded guilty to DUI, an offense of a very different nature than driving on a suspended license given that it involves a clear danger to the public. To be sure, defendant has since complied with the conditions of his court supervision. Nevertheless, "[t]here is nothing inequitable in allowing the State the opportunity to obtain convictions for wrongdoing, even if the court is ultimately unable to impose any additional penalty." *Id.* ¶ 21. Indeed, "the more severe the offense at issue, the greater the importance of the conviction." *Id.*

¶ 25     Given the above, we conclude that a remand for a new hearing on the State's petition to revoke supervision is both equitable and productive.

¶ 26                                    III. CONCLUSION

¶ 27     For the reasons stated, we vacate the order of the circuit court of Carroll County granting the State's petition to revoke supervision, vacate the conviction entered thereon, and remand for further proceedings.

¶ 28     Vacated and remanded.