2020 IL App (1st) 181262-U

SIXTH DIVISION
December 11, 2020

No. 1-18-1262

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 11010 |
| | ) | |
| MICHAEL ELLIS, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Connors and Harris concurred in the judgment.

**O R D E R**

¶ 1     *Held*:  Trial court's first-stage dismissal of defendant's postconviction petition reversed where defendant stated the gist of a claim for ineffective assistance based on his appellate counsel's failure to argue that his waiver of the rights to counsel was not knowing, intelligent, and voluntary but rather was made in response to the trial court's advising him that counsel could stipulate, over his objection, to certain elements of the charged crime.

¶ 2     Defendant Michael Ellis appeals from the first-stage dismissal of his petition for

postconviction relief under the Post-Conviction Hearing Act (Act) (735 ILCS 5/122-1 *et seq.*

(West 2016)), where he alleged that his appellate counsel was ineffective for failing to argue on appeal that Mr. Ellis felt forced to waive his right to counsel and to a jury trial after the trial court incorrectly informed him that his attorney could stipulate to the prior convictions required to convict him of being an armed habitual criminal over his objection. For the following reasons, we reverse the dismissal of Mr. Ellis's petition and remand for second-stage proceedings.

¶ 3                                    I. BACKGROUND

¶ 4     On April 27, 2011, Chicago police officers witnessed Mr. Ellis throw an object, which appeared to the officers to be a gun, into a car and quickly walk away. After seeing the gun on the front seat of the car, the officers arrested Mr. Ellis, and he was charged by indictment with one count of being an armed habitual criminal, two counts of unlawful use or possession of a weapon by a felon, and two counts of aggravated unlawful use of a weapon.

¶ 5                                    A. Pretrial

¶ 6     Mr. Ellis was initially appointed counsel, but on July 28, 2011, he elected to proceed *pro se*. He filed a motion to suppress the evidence and a motion to dismiss the indictment. The court denied both motions. Mr. Ellis filed a motion to reconsider the court's denial of his motion to dismiss, which was also denied. Mr. Ellis twice filed motions for substitution of the judge in his case for cause. The court denied both motions.

¶ 7     On September 27, 2012, at Mr. Ellis's request, the court appointed a public defender to represent him. However, on March 6, 2013, Mr. Ellis indicated that he no longer wished to be represented because, among other reasons, his counsel intended to stipulate to his prior convictions—elements of his armed habitual criminal charge—against his will. The court explained that Mr. Ellis "d[id not] have to stipulate to that" and that it is "pretty much [his] choice if [he] want[s] to or not." Ultimately, Mr. Ellis decided to proceed with counsel. The court later

informed Mr. Ellis again that "[i]f [he] d[oes]n't want to stipulate, then [the State] ha[s] to prove it up."

¶ 8    Prior to jury selection on May 29, 2013, defense counsel notified the court that she was going to stipulate to Mr. Ellis's prior felonies, "[n]ot just that they are the predicate felonies [for the armed habitual criminal charge], but as to what they are." After a recess, Mr. Ellis informed the court that he did not want to stipulate to the predicate convictions, at which point the court told him, "[i]t is not your call. It is their call."

¶ 9    On the morning of trial, May 30, 2013, Mr. Ellis notified the court that, "since counsel refused to respect [his] wishes and not stipulate to the convictional elements of this case, [he was] forced to go *pro se*." He also requested a bench trial, stating that the trial court "knows the law about those convictional elements. The jury do[esn]'t know the law. [The court] is the best one to decide that law about that convictional element." The court admonished Mr. Ellis regarding his right to proceed *pro se* and then asked what Mr. Ellis would like to do. The following exchange occurred:

> "[MR. ELLIS]: As I said before, your Honor, counsel do[esn't] want to present my defense. I have to represent myself.
>
> THE COURT: You want to represent yourself?
>
> [MR. ELLIS]: I have no choice.
>
> THE COURT: This is America. You've always got a choice.
>
> [MR. ELLIS]: I understand that, sir.
>
> THE COURT: You might not like your choices but you've got a choice.
>
> [MR. ELLIS]: I understand that, sir.
>
> THE COURT: You want to represent yourself?

3

[MR. ELLIS]: Yes."

¶ 10    The court then asked whether Mr. Ellis wanted to proceed with a jury or bench trial, to which Mr. Ellis responded that he wanted a bench trial.

¶ 11                                    B. Trial

¶ 12    Officers Esquivel, Rojas, and De La Rosa testified for the State. The following is taken from their testimony.

¶ 13    On April 27, 2011, at around 10:50 p.m., Officer Esquivel and his partner, Officer Valentin, were conducting a routine patrol of what they described as a high-crime area in an unmarked patrol car. Officers Rojas and De La Rosa were driving behind them in another unmarked squad car. As Officer Esquivel drove northbound on Harding Avenue approaching Thomas Street, he saw "a male subject at 3932 West Thomas" standing next to the passenger-side door of a burgundy Ford Taurus. The officers all identified Mr. Ellis as the man in question. Officer Esquivel testified that Mr. Ellis was looking around "in a very suspicious manner." He then saw Mr. Ellis "remove from his front waistband *** an object, open[] the door of the car, and place[] that object inside the car." Officer Esquivel "believed that it was a gun." Mr. Ellis then walked west down Thomas Street. Officers Esquivel and De La Rosa exited the vehicles and walked to the Ford Taurus, while Officers Valentine and Rojas continued down Thomas Street, following Mr. Ellis in the two unmarked cars. Officer Esquivel looked through the passenger-side window and saw a "a revolver, nickel plated," laying on the passage seat with no other objects around it.

¶ 14    Officer Esquivel radioed Officers De La Rosa and Valentin that there was a gun in the car, and they arrested Mr. Ellis, finding the keys to the Ford Taurus in his pants' pocket. Officer De La Rosa then recovered the gun from the passenger seat. The officers ran the plates of the car and found it was registered to Mr. Ellis. Certified records on the Ford Taurus showing ownership by

Mr. Ellis were also submitted at trial. Officer De La Rosa testified that Mr. Ellis told the police officers that he had the gun in order to "secure a dope tip," which Officer De La Rosa testified meant to secure a "spot where narcotics are being sold."

¶ 15    Officer James Polaski testified that he arrested Mr. Ellis on April 24, 2004, that Mr. Ellis was charged with delivery of a controlled substance in case No. 04 CR 12745, and that Mr. Ellis pled guilty to the offense on June 10, 2004. The State submitted a certified copy of the conviction.

¶ 16    Officer Srisuth testified that he arrested Mr. Ellis, who he identified in court, on July 26, 2005, and that at that time Mr. Ellis gave the name Timothy Watson. Mr. Ellis was charged with possession of a controlled substance with intent to deliver under the name Timothy Watson in case No. 05 CR 1983701 and was found guilty on March 14, 2006. The State submitted a certified copy of the conviction.

¶ 17    Mr. Ellis called Officers Esquivel, De La Rosa, and Valentine to testify in the defense case. The officers repeated the narrative presented in the State's case.

¶ 18    The trial court found Mr. Ellis guilty of being an armed habitual criminal and of the unlawful use or possession of a weapon by a felon, a charge that merged with his armed habitual criminal conviction. Mr. Ellis, after requesting and being granted counsel, filed a motion for a new trial arguing, *inter alia*, that "[t]he [t]rial [c]ourt erred in allowing stipulations over [Mr. Ellis]'s objection." The trial court denied the motion. Mr. Ellis also filed two *pro se* motions made pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), one of which argued that the ineffectiveness of his trial counsel caused him to waive his right to a jury. These motions were also denied. As this was Mr. Ellis's third Class X felony, the trial court sentenced him to life in prison under section 5-4.5-95 of the Unified Code of Corrections (730 ILCS 5/5-4.5-95 (West 2012)), which requires a life sentence for persons convicted of three Class X felonies within a 20-year period.

¶ 19                                    C. Direct Appeal

¶ 20    On direct appeal, Mr. Ellis argued that the trial court erred in denying his motion to suppress evidence and quash his arrest and that the armed habitual criminal statute was facially unconstitutional. On March 28, 2016, this court vacated Mr. Ellis's conviction, holding:

> "the police lacked probable cause to search Mr. Ellis's vehicle because any probable cause the officers had at the time of the search was based on a provision of the aggravated unlawful use of a weapon statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2010)) later found to be void *ab initio* by the Illinois Supreme Court in *People v. Aguilar*, 2013 IL 112116." *People v. Ellis*, 2016 IL App (1st) 140613-U, ¶ 3 (unpublished order under Supreme Court Rule 23).

This court did not reach the constitutionality of the armed habitual criminal statute. *Id.* The State filed a petition for leave to appeal to the Illinois Supreme Court from that order, and, on September 27, 2017, our supreme court issued a supervisory order denying the State's petition but directing us to reconsider our order in light of *People v. Holmes*, 2017 IL 120407. Upon reconsideration, this court held that the officers did not lack probable cause to seize the gun or arrest Mr. Ellis and that Mr. Ellis's facial challenge to the armed habitual criminal statute failed. *People v. Ellis*, 2018 IL App (1st) 140613-U, ¶ 7 (unpublished order under Supreme Court Rule 23).

¶ 21                              D. Postconviction Proceedings

¶ 22    On March 12, 2018, Mr. Ellis filed his *pro se* postconviction petition arguing, *inter alia*, that appellate counsel was ineffective for failing to argue that his constitutional rights to counsel and a jury trial were involuntarily waived when he was forced to proceed *pro se* after the trial court stated that his counsel could stipulate to his prior convictions over Mr. Ellis's objection. The trial court dismissed Mr. Ellis's petition on April 26, 2018, finding that his petition was frivolous and

patently without merit. This appeal follows.

¶ 23                              II. JURISDICTION

¶ 24    The trial court dismissed Mr. Ellis's postconviction petition on April 26, 2018, and Mr. Ellis timely filed his notice of appeal on May 9, 2018. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 606 (eff. July 1, 2017) and Rule 651 (eff. July 1, 2017), governing criminal appeals and appeals from final judgments in postconviction proceedings.

¶ 25                               III. ANALYSIS

¶ 26    Mr. Ellis argues on appeal that his postconviction petition stated the gist of a claim for ineffective assistance of appellate counsel as required to avoid a first-stage dismissal under the Act. We agree.

¶ 27    "The Act provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The filing of a petition under the Act is a collateral attack on the criminal proceedings; therefore, any issue raised and decided on direct appeal is barred by *res judicata*, and any issue that could have been raised but was not is forfeited. *People v. Tate*, 2012 IL 112214, ¶ 8.

¶ 28    Postconviction proceedings in non-capital cases are divided into three stages. *Hodges*, 197 Ill. 2d at 9. To advance beyond the first stage, a defendant must allege the "gist" of a constitutional claim, which our supreme court has stressed "is a low threshold." *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). Accordingly, the court will only dismiss a petition at the first stage if it is "frivolous or is patently without merit." *Hodges*, 197 Ill. 2d at 10. A petition is frivolous or patently without merit where there is "no arguable basis either in law or in fact." *Id.* at 12.

¶ 29     At the first stage, we take the allegations in a petition as true. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). Once a petition moves to the second stage, counsel will be appointed for an indigent defendant and the petition may be amended. *Gaultney*, 174 Ill. 2d at 418. At the second stage, the State may move to dismiss or answer the petition. *Id.* If a substantial showing of a constitutional violation is made, the petition advances to the third stage for an evidentiary hearing. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). We review the first-stage dismissal of a postconviction petition *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 387-88 (1998).

¶ 30     A defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. art. I, § 8. Illinois courts have adopted the test set forth in *Strickland v. Washington*, 466 U.S. 668, 685-87 (1984), to determine whether counsel was ineffective. *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). "Under that standard, a defendant must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful." *People v. English*, 2013 IL 112890, ¶ 33 (citing *Strickland*, 466 U.S. at 694). "Appellate counsel is not required to brief every conceivable issue on appeal, *** and it is not incompetence for counsel to refrain from raising issues that counsel believes are without merit." *People v. Edwards*, 195 Ill. 2d 142, 163-64 (2001). Further, "unless the underlying issue is meritorious, a defendant cannot be said to have incurred any prejudice from counsel's failure to raise the particular issue on appeal." *Id.* at 164. "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced." (Emphasis added.) *Hodges*, 234 Ill. 2d at 17.

¶ 31     The right to counsel is a fundamental right protected by both the United States and Illinois

constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13. Waivers of constitutional rights must be voluntary, knowing, and intelligent. *Brady v. United States*, 397 U.S. 742, 748 (1970). "Whether a jury waiver is valid cannot be determined by application of a precise formula, but rather turns on the particular facts and circumstances of each case." *People v. Bracey*, 213 Ill. 2d 265, 269 (2004). A written waiver, required under section 115-1 of the Code of Criminal Procedure (725 ILCS 5/115-1 (West 2016)), is "one means by which a defendant's intent may be established" but it "is not always dispositive of a valid waiver." *Id.* at 269-70.

¶ 32 Here, Mr. Ellis maintains that he chose to represent himself *pro se* and waive his right to a jury trial because the trial court incorrectly informed him that his counsel could stipulate to his prior convictions over his objection. His waiver was therefore unintelligent, and his appellate counsel was ineffective for failing to raise this issue.

¶ 33 Our supreme court has held that "defense counsel may generally waive a defendant's right of confrontation by entering into an evidentiary stipulation where two elements are met: (1) the defendant does not object; and (2) the decision to stipulate is a matter of trial tactics and strategy." *People v. Clendenin*, 238 Ill. 2d 302, 319 (2010). Mr. Ellis objected to the stipulations at issue here twice. In response to his second objection, the court stated "[i]t is not your call. It is their call." The record supports Mr. Ellis's claim that, based at least in significant part on this statement by the court, Mr. Ellis decided to forego his right to appointed counsel.

¶ 34 Under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), prior to permitting a defendant to proceed without counsel, a court must admonish him of:

> "(1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and (3) that he has a right to counsel and, if

he is indigent, to have counsel appointed for him by the court."

¶ 35　Neither party contests that Mr. Ellis received these admonishments from the court or that he provided a written waiver of his right to a jury trial. The State argues that because those two requirements were met, his waivers were voluntary and intelligent. However, waiver of a constitutional right must also be "done with *sufficient awareness of the relevant circumstances*." (Emphasis added.) *Brady*, 397 U.S. at 748. Mr. Ellis, who was told that if he were represented by counsel, he would have no choice but to stipulate to his prior convictions, decided instead to proceed *pro se*. On this record, it cannot be said—despite the admonishments he received—that he was sufficiently aware of the relevant circumstances. Thus, Mr. Ellis clearly had a claim that could have been raised on his direct appeal: he did not intelligently waive his right to trial counsel.

¶ 36　The first question then is whether appellate counsel's failure to raise this claim was arguably deficient. The State argues that there is no precedent precisely on point, and therefore counsel was not deficient in failing to raise this claim. However, there is clear and longstanding precedent that, as mentioned above, a waiver of a constitutional right must be "done with sufficient awareness of the relevant circumstances" (*Brady*, 397 U.S. at 748), and that a stipulation may not be entered into over a defendant's clear objection (*Clendenin*, 238 Ill. 2d at 319). These well-settled points rendered appellate counsel's failure to raise this claim arguably deficient.

¶ 37　The other issue is prejudice to Mr. Ellis on appeal. As we have recognized, the assistance of counsel is so fundamental that a defendant who has been convicted without counsel "is entitled to a reversal of that conviction without showing that the deprivation caused him or her prejudice." *People v. Vernón*, 396 Ill. App. 3d 145, 152-53 (2009). Accordingly, if the claim that Mr. Ellis did not knowingly and intelligently waive his right to counsel had been raised on his direct appeal, and this court agreed that Mr. Ellis's waiver was not valid, Mr. Ellis would have been entitled to a

reversal of his conviction without making the otherwise-requisite showing of prejudice. *People v. Vazquez*, 2011 IL App (2d) 091155, ¶ 14 (right to counsel is fundamental and reviewable under the plain-error doctrine); *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) ("[u]nder the second prong of plain-error review, [p]rejudice to the defendant is presumed because of the importance of the right involved, *regardless* of the strength of the evidence" (emphasis in original; internal quotation marks omitted)).

¶ 38 The State's argument that Mr. Ellis was not prejudiced under *Strickland* because his direct appeal was "initially successful" overlooks the fact that Mr. Ellis's conviction was ultimately affirmed after the supreme court's supervisory order. He is currently in prison for the rest of his life, which is the reality we must consider when assessing whether it is arguable that he was prejudiced by his appellate counsel's performance. Bringing a claim of unintelligent waiver of counsel would not have precluded appellate counsel from also bringing the probable cause claim that was initially, but not ultimately, successful.

¶ 39 In short, because we find that the underlying issue is arguably meritorious, and it is arguable that the outcome of his appeal, even after the supreme court's remand on a supervisory order, would have been successful had his appellate counsel raised this issue, Mr. Ellis has made a sufficient showing to proceed to the second stage of postconviction proceedings. See *Hodges*, 197 Ill. 2d at 12 (a petition should only be dismissed at the first stage if there is "no arguable basis either in law or in fact").

¶ 40 We also note that any reason that Mr. Ellis proffers on appeal—and any argument to the contrary the State supplies—for his decision to not stipulate to evidence is immaterial. The issue here is whether Mr. Ellis's waiver of his fundamental right to counsel was unintelligent because he was misinformed by the trial court. His justification for refusing to stipulate to his prior

convictions at trial, and whether those justifications were, as the State argues, "baseless," have no impact on this analysis.

¶ 41    Mr. Ellis also argues that there is a connection between the trial court's misstatement of the law and his decision to proceed with a bench trial. This is not altogether apparent from the record. Mr. Ellis stated that he chose to proceed with a bench trial because the trial court would understand "the convictional elements" better than a jury. In his postconviction petition, Mr. Ellis stated the court's incorrect statement of law "prejudiced [his] selected jury on the day of [his] trial and caused [him] to switch to a bench trial." Mr. Ellis does not expand on either theory on appeal. While we are not convinced of the merit of this argument, at the first stage either the entire petition is dismissed, or the entire petition is docketed for second-stage review. *People v. Rivera*, 198 Ill. 2d 364, 371 (2001). Because there is an arguable basis in law that Mr. Ellis's appellate counsel performed ineffectively by failing to raise the issue that his waiver of counsel was unintelligent, his entire postconviction petition should be remanded to the second stage.

¶ 42                                    IV. CONCLUSION

¶ 43    For the foregoing reasons, we reverse the trial court's first-stage dismissal of Mr. Ellis's postconviction petition and remand the petition for second-stage proceedings.

¶ 44    Reversed and remanded.